(C.D. 2522)

GALLAGHER & ASCHER COMPANY v. UNITED STATES

United States Customs Court, Second Division

(Decided March 31, 1965)

*Wallace & Schwartz* (*Earl R. Lidstrom* and *Joseph Schwartz* of counsel) for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Morris Braverman* and *Alfred A. Taylor, Jr.*, trial attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: The three protests enumerated in the schedule attached hereto have been consolidated for purposes of decision. The

question presented to the court thereby is whether certain lock cylinders, each with two keys, composed of metal, described on the invoices accompanying the entries as "part plugs for automobile gas tank caps for further manufacture with 2 keys each" properly are subject to classification as articles not specially provided for, composed in chief value of steel, in paragraph 397 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 397), as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, and dutiable at the rate of 19 per centum ad valorem, plus the pertinent copper tax assessment where applicable pursuant to section 4541 of the Internal Revenue Code (26 U.S.C. § 4541), or as amended.

The contention relied upon by plaintiff herein is that said articles should properly have been classified as parts of automobiles in paragraph 369(c) of said act (19 U.S.C. § 1001, par 369(c)), as modified by the sixth protocol, *supra*, and subjected to duty at the rate of 10½ per centum ad valorem.

The pertinent statutory provisions referred to are here set forth.

Paragraph 397 of the Tariff Act of 1930, as modified by the sixth protocol, *supra:*

Articles or wares not specially provided for, whether partly or
wholly manufactured:

 \*  \*  \*  \*  \*  \*  \*

 Composed wholly or in chief value of iron, steel, copper,
 brass, nickel, pewter, zinc, aluminum, or other base metal
 (except lead), but not plated with platinum, gold, or
 silver, or colored with gold lacquer:

  \*  \*  \*  \*  \*  \*  \*

  Not wholly or in chief value of tin or tin plate:
   Carriages, drays, \* \* \*

   \*  \*  \*  \*  \*  \*  \*

   Other, composed wholly or in chief value of
   iron, steel \* \* \*_____ 19% ad val.

Paragraph 369 of said act, as modified by the sixth protocol, *supra:*

(a) Automobile trucks valued at $1,000 or more each, automobile
truck and motor bus chassis valued at $750 or more each,
automobile truck bodies valued at $250 or more each, motor
busses designed for the carriage of more than 10 persons,
and bodies for such busses, all the foregoing, whether
finished or unfinished_____ 10½% ad val.

(b) All other automobiles, automobile chassis, and automobile
bodies, all the foregoing, whether finished or unfinished\_\_\_ 8½% ad val.

(c) Parts (except tires and inner tubes and except parts wholly
or in chief value of glass), finished or unfinished, not
specially provided for, for any of the articles described in
item 369(a) or 369(b) in this Part_____ 10½% ad val.

Whereas plaintiff does not contend that the articles in issue are in themselves parts of automobiles, it does contend that they are parts of parts of automobiles and, on the recognized principle that a part of a part is part of the whole, the lock cylinders are within the purview of paragraph 369(c), *supra*, as parts of automobiles.

It is the position of the Government, on the other hand, that the articles are not parts of automobiles in any sense and, although chiefly used on automobiles, they are not necessary to the production or functioning of such vehicles.

These cases have been submitted for our determination on the testimony of one witness who appeared on behalf of plaintiff and two exhibits, which were received in evidence and which will be referred to, *infra*.

Plaintiff's witness, Donald E. Edelmann, associated since 1957 with the Wayne Metalcraft Co., manufacturer of automobile parts and accessories, testified that, as vice president, he manages the production department of his company and supervises purchasing. He stated he is familiar with the merchandise involved in this case and described on the invoices as part plugs with keys, a sample of which was received in evidence as plaintiff's exhibit 1.

Edelmann stated that said articles are used in the assembly of locking gasoline caps, a sample of the latter being received in evidence as plaintiff's exhibit 2. Said exhibit 2 is a device which is fastened to the filler neck of an automobile gas tank which makes the gas tank pilfer-proof and the contents theft-proof to anyone not in possession of either of the two keys. Edelmann stated that there is no other use for the device and that he has never seen these gas tank covers on any object other than automobiles. Edelmann testified that all automobiles have a gas tank cover but not all automobiles have a locking gas tank cover.

Exhibit 1 does not constitute a complete locking device. Before a locking gas cap assembly can be used as a locking device, a locking cover, a back plate, a pair of locking bolts, a pair of lock bolt springs, retainer plates, and gasketing materials have to be incorporated around the locking cylinder, represented by exhibit 1.

It was Edelmann's testimony that exhibit 1 can not be inserted into an object other than a gas tank cover, such as is in evidence as exhibit 2. The reason for this is that his company's engineering department has designed and engineered the lock cylinder to be a component of a specific cap, and, because of the size, shape, tolerance, location of the driving pin, and so forth, it can only fit a specific cap or possibly two or three other gas tank caps in its line.

After the gas tank cover is inserted over the gas tank neck and the key is removed, it is not possible by normal means to remove the cover

from the neck of the gas tank without the key. It would have to be forcibly removed. And when the imported cylinder is attached to a housing, the cylinder can not be removed without disassembling the whole unit.

Edelmann testified that the imported articles are composed wholly of metal.

The witness stated further that he had never seen a locking cap on anything except an automobile. He had never seen such a cap made for a motorcycle and explained that the filler necks on motorcycles are not standardized. Moreover, he did not believe there would be a sufficient market for locking caps for motorcycles. He testified also that he had never seen a locking cap on the gas tank of a motorboat and, due to the comparatively limited production of any one model of motorboat, he did not believe that manufacturers would be interested in producing locking caps for such a market.

Edelmann stated that not every automobile has a locking cap; that such a cap is not necessary for the automobile to function; and that he does not know of any law that requires a locking cap on an automobile gas tank for the operation of such a vehicle on the streets. He added, however, that all gas tanks have a cover of one type or another and that an automobile can not operate without a gas tank or some supply of fuel.

The court is here presented with the determination of two questions. The first: Is a lock cylinder as represented by plaintiff's exhibit 1 a part of an assembly known as a locking gas tank cap? The second is: Does a locking gas tank cap constitute a part of an automobile? If such be the case, then the principle that "an integral part of an integral part of an article is an integral part of such article" (*United States* v. *American Express Co.*, 29 CCPA 87, C.A.D. 175), as contended for by plaintiff herein, is applicable.

As to the first inquiry, the testimony of plaintiff's witness Edelmann stands uncontradicted on the facts that the imported merchandise is expressly designed to be used as a component part of an automobile gas tank cover; that such gas tank covers for which the cylinders are designed can not be used without said cylinders; and that the cylinders have no particular use separate and apart from the covers for which they are designed. The conclusion is inescapable, therefore, that said cylinders are integral and constituent parts of the automobile gas tank covers with which they are joined and that the latter could not function for their designed purpose without said cylinders. *United States* v. *Willoughby Camera Stores, Inc.*, 21 CCPA 322, T.D. 46851.

Decisive of the second question for determination by the court, namely, whether an automobile gas tank cover is a part of an automobile and within the *eo nomine* provision for such parts in paragraph 369(c) of the Tariff Act of 1930, as modified, *supra*, is the recent

decision of our appellate court in *Gallagher & Ascher Company* v. *United States*, 52 CCPA —, C.A.D. 849, decided December 23, 1964. In said *Gallagher & Ascher* case, the court, in holding that certain imported auxiliary automobile heaters were parts of automobiles in paragraph 369(c) of the Tariff Act of 1930, as modified, *supra,* reviewed a number of cases on the question of what constitutes a "part" of an article. Included in said review were the cases of *United States* v. *Antonio Pompeo*, 43 CCPA 9, C.A.D. 602; *Trans Atlantic Company* v. *United States*, 48 CCPA 30, C.A.D. 758; *United States* v. *Carl Zeiss, Inc.*, 24 CCPA 145, T.D. 48624; *United States* v. *Bosch Magneto Co.*, 13 Ct. Cust. Appls. 569, T.D. 41434; *Welte & Sons* v. *United States*, 5 Ct. Cust. Appls. 164, T.D. 34249; *Durbrow & Hearne Mfg. Co.* v. *United States*, 9 Ct. Cust. Appls. 177, T.D. 38001; *United States* v. *American Steel & Copper Plate Co.*, 14 Ct. Cust. Appls. 139, T.D. 41673; and *Stoeger* v. *United States*, 15 Ct. Cust. Appls. 291, T.D. 42472. Many of said cases have been referred to in the briefs of the parties to the instant controversy, all of which have been given our consideration.

After our appellate court had referred to the above-cited cases, it stated in language as apt in the determination of the instant issue as it was in the case then before the appellate court that we quote therefrom as follows:

> Most significant in the overwhelming weight of its impact on the factual situation instantly presented and the rule in *Willoughby per se,* and as applied by the Customs Court, is this court's summary analysis of the line of cases cited above. This court in *Trans Atlantic* said:
>
>> In all of these cases, as in the present case, there was an option on the part of the purchaser of the article to use it either with or without the imported auxiliary devices. When the purchaser elected to use the article with such auxiliary devices, the devices were held in each case to be parts of the article for which they were designed and intended for use. In all these cases the articles could have been used without the imported auxiliary device. In these cases the court considered the function of the auxiliary part when the purchaser elected to use it as a part of the article and did not consider it determinative that the article could function without the auxiliary part.

The appellate court, in the *Gallagher & Ascher* case, came to the conclusion that—

> * * * When once attached to the automobile to which it was solely dedicated and in the manner disclosed, and in the performance of the function for which it was designed, it became a part of the automobile within the purview of paragraph 369(c) of the Tariff Act of 1930, as modified.

It is an undeniable fact that the gas tank of an automobile requires a cover for the safe and efficient operation of the automobile. And, whereas there is an option on the part of the automobile owner whether or not to use a gas tank cover of the locking type, when the automobile

owner elects to use such an article, the device becomes part of the article for which it was designed and with which it was intended to be used. To paraphrase the holding of our appellate court, in the *Gallagher & Ascher* case, when locking gas tank caps, of which the imported lock cylinders with keys are essential and integral parts, are attached to automobiles for which they are solely dedicated, and in the performance of the function for which they were designed, they become parts of automobiles within the purview of paragraph 369(c) of the Tariff Act of 1930, as modified, *supra*, for which duty at the rate of 10½ per centum ad valorem is provided.

We so hold.

Judgment will be entered accordingly.