(C.D. 2834)

GAMBLE VARGISH & CO., DBA SEABURY & CO. *v.* UNITED STATES

United States Customs Court, First Division

(Decided November 29, 1966)

*Lawrence & Tuttle* (*Edward N. Glad* of counsel) for the plaintiff.
*Barefoot Sanders*, Assistant Attorney General (*Murray Sklaroff, James F. O'Hara*, and *James S. O'Kelly*, trial attorneys), for the defendant.

Before OLIVER, NICHOLS, and WATSON, Judges

WATSON, Judge: The involved protests which were consolidated for trial cover certain miniature electric motors, some with pinion gears and others with worm gears, with or without leads attached. The articles in question were classified at the rate of 35 per centum ad valorem under paragraph 1513 of the Tariff Act of 1930, as modified by the Japanese Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, T.D. 53865, supplemented by T.D. 53877, as parts of toys, not specially provided for. Plaintiff makes two claims in these protests: for classification under paragraph 353 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739, at the rate of 12½ per centum ad valorem, as articles having as an essential feature an electrical element or device, "electric motors," or, alternatively, under said paragraph 353, as modified, *supra*, at the rate of 13¾ per centum ad valorem under the provision therein for articles having as an essential feature an electrical element or device, "other."

At the trial, the record in *Polks Model Craft Hobbies, Inc., et al.* v. *United States*, 38 Cust. Ct. 422, Abstract 60545 (protest 299587–K) was incorporated herein. (R. 18.) In the incorporated case, the merchandise consisted of certain electric motors which were classified under paragraph 1513 of the Tariff Act of 1930, as modified, as toys, not specially provided for, and which were claimed properly classifiable under paragraph 353 of the act, as modified, as articles "having as an essential feature an electrical element or device * * *." The court therein found that the merchandise in question was not used for

the amusement of children and that the electric motors there in question were chiefly used for adults, possessing technical knowledge concerning the basic principles of electricity, in the manufacture or construction of various electrical products. Since it was stipulated in that case that the involved electric motors had as an essential feature an electrical element or device and that they were in chief value of metal, the claim of the plaintiff was sustained. Defendant, in the case at bar, agrees, in view of the holdings of this court in the cases of *Polks Model Craft Hobbies, Inc., et al.* v. *United States, supra*; *James G. Wiley Co. et al.* v. *United States*, 49 Cust. Ct. 199, Abstract 66961; and *H. H. Elder & Co. et al.* v. *United States*, 48 Cust. Ct. 397, Abstract 66651, that the classification here made of the involved merchandise under paragraph 1513 of the Tariff Act of 1930, as modified, as parts of toys was erroneous. Specifically, however, defendant does not concede the propriety of plaintiff's claim under paragraph 353, *supra*, at the 12½ per centum ad valorem rate for "electric motors" and now contends that the involved merchandise, as imported, is more than an electric motor and, accordingly, that it is properly dutiable under said paragraph 353 of the act, as modified, *supra*, at the rate of 13¾ per centum ad valorem, as alternatively claimed by the plaintiff herein.

The pertinent provisions of the statutes here under consideration are as follows:

Paragraph 353 of the Tariff Act of 1930, as modified by T.D. 52739, provides in necessary part:

Articles having as an essential feature an electrical element or device, * * * finished or unfinished, wholly or in chief value of metal, and not specially provided for:

    *        *        *        *        *        *        *

       Electric motors, furnaces, heaters and ovens_ 12½% ad val.

 *        *        *        *        *        *        *

       Other  (except * * *)_____ 13¾% ad val.

The record herein consists of the unrebutted testimony of Mr. Reuben Dight, sales manager and partner, "in the import side" of the business of Seabury & Co., plaintiff herein (R. 3); two exhibits; and the record and exhibits in the *Polks Model Craft* case, *supra*, incorporated herein. Plaintiff's illustrative exhibit 1 (R. 5) consists of a sample identical to the motors without leads and with pinion gear (R. 4). It appears that the only difference between this sample and the remaining motors here in question is that some had leads and/or a worm gear (R. 4). Defendant's exhibit A (R. 14) consists of a small vacuum cleaner for cleaning car seats (R. 12). It has a motor identical to plaintiff's illustrative exhibit 1 with the exception that the

stand or base on exhibit A is a different type stand than that on plaintiff's exhibit 1 (R. 13).

Plaintiff's witness stated that he has been familiar with motors such as those in plaintiff's exhibit 1 for some 30 years. Exhibit 1 runs on d.c. electrical current from a battery (R. 6). He testified that he has seen identical motors used in electric fans and in electric vacuum cleaners (R. 7). The witness further stated, after viewing the exhibits in the incorporated case, *supra* (protest 299587–K), that the miniature motor in plaintiff's exhibit 1 is the same type as the motors in the exhibits in the incorporated case and is operated in the same way (R. 8). Mr. Dight testified that the "stand" or base with the four little holes on plaintiff's exhibit 1, is a "fixing stand" for attachment purposes (R. 10–11), "merely used to fasten the motor to something," the stand serving no purpose except as a support (R. 13); that most of the motors in the exhibits in protest 299587–K, the incorporated case, do not have stands or bases (R. 12) except for the motor in plaintiff's exhibits 1 and 15 in said case, the latter of which is an electric rotisserie turner (R. 15). The witness stated, however, that the motors in the exhibits in the incorporated case are the same as the motor in plaintiff's exhibit 1 in the case at bar (R. 13); that the motor in exhibit 1 in the incorporated case is the same motor (R. 15–17) made by the same manufacturer (R. 16) as plaintiff's exhibit 1 in the present case, except that one has a light metal covering and the other has a brass metal covering. In addition, plaintiff's exhibit 1 in the present case has a gear (R. 15). Mr. Dight stated, however, that the presence of the gear on plaintiff's exhibit 1, in the case at bar, does not limit its use any differently than that of exhibit 1 in the incorporated case. (R. 15–17.)

Essentially the question to be resolved, in the case at bar, is whether the presence of the pinion or worm gears on the imported motors makes them something "more than" a "motor" for tariff purposes. The defendant concedes that the involved merchandise is properly classifiable under paragraph 353 of the tariff act, as "articles having as an essential feature an electrical element or device" but, as heretofore indicated, contends that it is not properly dutiable as such at the rate of 12½ per centum ad valorem under the provision in said paragraph for "electric motors," as claimed, but that it should be classified at the rate of 13¾ per centum ad valorem under the provision in said paragraph 353 for "other" articles than the "electric motors" specifically provided for in said paragraph.

Plaintiff, in its brief (p. 4), maintains that "The gear on exhibit 1 herein, having been attached to the motor prior to importation has become a part of the motor," contending in effect that the presence of the gears on the imported motors does not render the latter anything more than a motor. In this connection, our attention is directed

to the holding of the court in *United States* v. *Antonio Pompeo*, 43 CCPA 9, C.A.D. 602. In the *Pompeo* case, *supra*, the importation in question consisted of so-called "superchargers"—devices used to increase the power of automobile engines—which were classified under paragraph 372 of the Tariff Act of 1930, as modified, as "machines," not specially provided for, and which were claimed properly classifiable under paragraph 369(c) of the act, as modified, as "parts" of automobiles. The record therein indicated that the imported superchargers were designed specifically for use on automobiles; that extensive alterations in the engines were necessary to install the superchargers; that Ford and Austin automobiles (for which engines the superchargers in question were designed for use), as manufactured, do not have superchargers; that some makes of automobiles have been manufactured with superchargers and that superchargers are made for automobiles other than Fords or Austins. It further appeared that the Ford engine and the Austin engine would operate if no supercharger had been installed therein and that once a supercharger had been installed in a Ford or Austin engine the engine would not operate if the supercharger failed. The court in the *Pompeo* case, *supra*, held the involved superchargers properly classifiable under paragraph 369(c) of the tariff act, as modified, as "parts" of automobiles as claimed. In so holding, the court in the *Pompeo* case, *supra*, page 14, stated:

The cases cited by appellee, in our opinion, clearly indicate that where an article at time of importation is dedicated to a specific use, the question of whether the article is a part must be determined from the nature of the article as it is applied to that use. In the *Zeiss* case, *supra*, the court said, "In the case at bar, where a camera for which the finders represented by Exhibits A and B are designed is equipped with a lens and its corresponding finder, *then* the finder is necessary to the completion of the camera and is 'an integral, constituent, or component part, without which the article to which it is * * * joined, could not function as such article.'" (First emphasis added.) The court did not consider whether the involved finders were parts of cameras considered *in vacuo*, but whether they were parts of cameras when they were applied to their intended use on the cameras. Similarly, in the *Stoeger* case, *supra*, the court did not consider whether pistols would operate without the drum magazine, for it was clear that pistols would fire with the regular magazine with which it was normally equipped. Rather, the court considered the function played by the drum magazine as it was placed in use upon the pistol, and determined that at that time it was a part of the pistol.

In the instant case there seems to be no doubt but that the involved superchargers are "parts" of automobiles after they are installed upon the automobiles. Since the imported superchargers at time of importation are dedicated solely for use upon automobiles, as previously pointed out, and since when applied to that use they clearly meet the

definition of "parts" established by the *Willoughby* case, we are of the opinion that they were correctly classified as parts for automobiles.

In *R. W. Cramer Co., Inc.* v. *United States*, 26 Cust. Ct. 141, C.D. 1315, it was held that flat, thin, circular pieces of steel, notched around the perimeter and with a hole in the center were unfinished parts of subsynchronous motors. It appeared that, after importation, the articles were ground and trued, assembled with a shaft and a gear, magnetized, and incorporated in a motor. The record indicated that the circular pieces were essential for the proper construction and operation of the motors and had no commercial use other than as rotors of synchronous motors.

In *Gallagher & Ascher Company* v. *United States*, 52 CCPA 11, C.A.D. 849, it was held that auxiliary heaters for use in Volkswagen automobiles were dutiable as parts of automobiles, even though it was an optional feature to be installed on request. The court noted that whether a given article constitutes a part of another article depends upon the nature of the part and on its function and purpose in its relation to the article to which it attaches or with which it is designed to serve. It stated that the record established that the auxiliary heater contributed to the safe and efficient operation of the Volkswagen in frigid temperatures in relation to the comfort of the passengers and in aid of the safety factor of vision by assisting in the removal of ice from the windshield. It concluded that when once attached to the automobile to which it was solely dedicated and in the performance of the function for which it was designed, it became a part of the automobile.

See also *Lanston Industries, Inc.* v. *United States*, 49 CCPA 123, C.A.D. 807, where it was held that monophoto machines were not more than a technical advance in typesetting machines, and *Gallagher & Ascher Company* v. *United States*, 54 Cust. Ct. 141, C.D. 2522, where it was held that when an automobile owner elects to use a gas tank cover of the locking type, it becomes part of the article for which it was designed and with which it was intended to be used.

It appears, upon examination of the sample in this case, that the pinion gear or worm gear is integrated physically in the motor, and, as far as we are able to determine, does not cause any substantial change in the use of the motor. Accordingly, in our opinion, the pinion or worm gear is a part of the motor, and the gear on the merchandise represented by plaintiff's exhibit 1 does not make the article anything "more than" a motor than would the presence or absence of a base determine whether such an item is something more than a "motor."

The defendant, in support of its contention that the involved merchandise, as imported, is more than an electric motor and, accordingly,

is properly dutiable at the rate of 13¾ per centum ad valorem under the provision for "other" articles having as an essential feature an electrical element or device in paragraph 353, *supra*, directs our attention to the holding of our appellate court in *United States* v. *The A. W. Fenton Company, Inc.*, 49 CCPA 45, C.A.D. 794, as controlling in the classification of the involved motors.

In the *Fenton* case, *supra*, the involved merchandise consisted of certain electric motors which had been designed for use in Hoover electrical floor polishers. The court therein described the involved merchandise as follows:

The record shows that the article includes such components of an electric motor as an armature, field assembly, commutator, carbon brushes, and bearings, along with a two-piece frame which holds those parts together as a unit. Each end of the armature shaft is provided with a worm adapted to drive a worm gear. Such a gear, mounted on a drive shaft, is held in driven connection with each of the worms by the frame. The two drive shafts are disposed in spaced parallel relationship, perpendicular to armature shaft.

The importer's claim for classification of the merchandise under paragraph 353 of the tariff act as motors of more than 1/10 horsepower but less than 200 horsepower had been sustained by this court. (*The A. W. Fenton Company, Inc.* v. *United States*, 45 Cust. Ct. 143, C.D. 2214.) The parties to the controversy in the *Fenton* case, *supra*, accepted (as apparently did the court) the following definition of the term "electric motor":

motor * * *
Elec. A rotating machine which transforms electrical energy into mechanical energy. It consists of two principal parts: a field-magnet winding or a distributed-stator winding producing a magnet field, and a rotating armature or rotor in whose conductors flow currents which are acted upon by the magnetic field and cause rotation. * * * [Webster's New International Dictionary, 2d edition, unabridged.]

In reversing the decision of this court, our appellate court in the *Fenton* case, *supra*, held the merchandise there involved to be more than electric motors and not classifiable simply as motors under paragraph 353 of the tariff act but properly classifiable under said paragraph at the rate of 13¾ per centum ad valorem under the provision therein for:

Articles having as an essential feature an electrical element or device, * * *:

 *   *   *   *   *   *   *

   Other * * *

The *Fenton Company* case, *supra*, in our opinion is not decisive of the issue of whether the addition of gears to miniature motors

makes them something more than motors. The merchandise there was invoiced as "Hoover Electric Motor and Gear Assemblies." The court noted that the merchandise was actually the principal component of a complete floor polisher. It contained many components. The court said (p. 49):

It seems to us the Customs Court erred as a result of treating the features which the article included, in addition to the essentials set out in the definition of an electric motor, as doing no more than transforming the article into a gear motor or special purpose motor.

The article does include a motor. It also includes gears and it clearly is designed for a special purpose. But the additional features it includes do more than make it a special type of motor. They dedicate it to one particular use as a part of a floor polisher. Since it is more than a motor, it is not properly classifiable as a motor for tariff purposes. It seems to us that to hold otherwise would be to expand by degree the term "motor" to a point beyond the accepted definition of that term.* * *

This seems to indicate that there could be something called a gear motor or special purpose motor and that something which transformed an article into no more than a gear motor or special purpose motor would not take it out of the definition of motor, especially if, as in the case at bar, it did not dedicate the article to a particular use.

Machinery's Handbook, 16th edition, page 2025, states that a complete motor is one made up of a stator, a rotor, a shaft, and two end shields with bearings. It refers to gears and other items as being mounted to the bearing on the motor or generator shaft (p. 2015) and also mentions electric motors having built-in speed-changing units, including the worm-gear type of reduction unit. (Pp. 2023–2024.)

Paragraph 368(a) of the Tariff Act of 1930 provides for synchronous and subsynchronous motors of less than one-fortieth of one horsepower valued at not more than $3 each, not including the value of gears or other attachments. The Comparative Print of H.R. 2667, as passed by the House and as reported to the Senate, notes on page 122:

Note.—Subsynchronous motors less than one-fortieth horsepower valued at more than $3 each (exclusive of gears or other attachments) * * * have been transferred to Par. 353 (p. 101 of this print), at 30 per centum ad valorem.

In our opinion, the above references would seem to indicate that Congress thought of a gear as an attachment to a motor.

Upon the record here presented, we are of opinion and hold that the involved merchandise is properly dutiable under the provisions of paragraph 353 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739, at the rate of 12½ per centum ad valorem as articles having as an

essential feature an electrical element or device such as "electric motors," as claimed. To the extent indicated, the protests are sustained. In all other respects and as to all other claims, the protests are overruled. Judgment will issue accordingly.