(C.D. 3899)

GALLAGHER & ASCHER COMPANY *v.* UNITED STATES

## United States Customs Court, Second Division

(Decided October 14, 1969)

*Schwartz & Lidstrom* (*Barnes, Richardson & Colburn* and *Earl R. Lidstrom* of counsel) for the plaintiff.

*William D. Ruckelshaus*, Assistant Attorney General (*Mollie Strum, Robert T. Richardson*, and *John A. Winters*, trial attorneys), for the defendant.

Before RAO, FORD, and MALETZ, Judges

MALETZ, Judge: These two cases, which were consolidated for trial, involve the proper tariff classification of certain lock cylinder plugs, each with two keys that were imported for use with locking gas tank caps. The plugs and keys were manufactured in England and entered at the port of Chicago in January and February 1964 (protest 67/45137) and in April 1966 (protest 67/45138). They were classified by the government under item 646.92 of the Tariff Schedules of the United States (19 U.S.C. § 1202) as parts of locks and lock keys and assessed with duty at the rates of 19 percent ad valorem or 18 percent ad valorem, depending on the date of entry.[1]

Plaintiff challenges this classification and claims that the importations are properly classifiable as parts of motor vehicles under item 692.25 of the tariff schedules, dutiable at only 8.5 percent ad valorem. We sustain the claim.[2]

The pertinent provisions of the tariff schedules read as follows:

Classified under:

Schedule 6, part 3, subpart D

Locks and padlocks (whether key, combination, or electrically operated), luggage frames incorporating locks, all the foregoing, and parts thereof, of base metal; lock keys:

\*    \*    \*    \*    \*    \*    \*

---

[1] By virtue of certain compensatory concessions granted by the United States, the rate of duty under item 646.92 was reduced from 19 percent to 18 percent, effective January 1, 1966. See T.D. 66–9.

[2] Prior to January 18, 1965, item 692.25 covered other parts of motor vehicle chassis and bodies. On October 21, 1965, that item was redesignated as item 692.27. See 79 Stat. 1021, 1023; Pres. Procl. 3682, 3 CFR (1965 Supp.) p. 68. However, plaintiff's protest 67/45138 covering the April 1966 entry claimed under item 692.25 rather than under item 692.27. Further, plaintiff has not sought to amend the protest to interpose a claim under the latter item. Notwithstanding these considerations, defendant has consistently treated the protest as though the claim was made under this latter item—692.27. In this circumstance, protest 67/45138 is deemed amended so as to interpose a claim under item 692.27. See rule 6(c).

| 646.92 | Other _____ | 19% ad val. (18% ad val.) |
|---|---|---|

Claimed under:

Schedule 6, part 6, subpart B-Motor Vehicles

Chassis, bodies (including cabs), and parts
of the foregoing motor vehicles:
     *     *     *     *     *     *     *

Other:
     Cast-iron * * *

| {692.25<br>{692.27 [3] | Other _____ | 8.5% ad val. |
|---|---|---|

The facts as shown by the record are these. The imported cylinder plugs were designed by the consignee solely for use by it in its locking gas tank caps and are solely used for that purpose. They are integral parts of these gas caps without which the caps could not function. The caps in turn were designed by the consignee to lock over the filler neck of an automobile fuel tank and are used almost exclusively for that purpose. They serve the dual purpose of keeping the gasoline inside the tank and preventing theft of the fuel.

The imported cylinder plug contains five tumblers, with each having a coil spring under it and a cut that matches the cut on a key. When the key is inserted, it overcomes the spring tensions and alines the tumblers inside the plug, allowng the cylinder to rotate. The cylinder plug is housed in a barrel, which barrel forms an integral part of the gas tank cap. Lugs on the back of the plug are engaged in a bolt or cam, and upon rotation of the key these bolts or cams are moved and accomplish the unlocking.

After importation into the United States, the cylinder plug is assembled into the locking gas tank cap in the following manner: The cylinder is inserted into a die-cast chrome-plated gas tank cover, and a rubber gasket is then slipped over this assembly. A subassembly consisting of a die-cast back plate, a pair of locking bolts, a pair of lock-bolt springs and a metal back plate is then fastened to the gas tank cover by a pair of screws. All of the items are necessary to form the complete locking gas tank cap. The cylinder plugs are never sold alone but always with the other components as complete articles.

At the outset it is to be observed that cylinder plugs identical to those involved here were previously before the court in *Gallagher & Ascher Co.* v. *United States*, 54 Cust. Ct. 141, C.D. 2522 (1965). In that case—which arose under the Tariff Act of 1930—the government classified the cylinder plugs under paragraph 397 of the 1930 act as articles in chief value of steel not specially provided for. Plaintiff

---

[3] See note 2, *supra*.

claimed they were properly classifiable under paragraph 369(c) as parts of automobiles. The court sustained the claim. It first found that the cylinder plugs were integral and constituent parts of the automobile lock gas tank caps with which they were joined and that the latter could not function for their designed purpose without such plugs. The court further found that the locking gas tank cap constituted a part of an automobile. In that circumstance, the court concluded that the cylinder plug was a part of an automobile on the rationale of *United States* v. *American Express Co.*, 29 CCPA 87, C.A.D. 175 (1941), that a part of a part of a main article is a part of the main article.

The prior case is not dispositive of the present controversy however. For in contrast to the present tariff schedules, the Tariff Act of 1930, under which the earlier case arose, contained no provision for "parts of locks." Thus, while the cylinder plugs are undeniably parts of motor vehicles, the issue in the present case is whether they are also parts of locks and hence more specifically provided for as such. And that issue arises here for the first time.

According to General Interpretative Rule 10(ij) of the tariff schedules, "a provision for 'parts' of an article covers a product solely or chiefly used as a part of *such article* * * *." [Emphasis added.] It follows that the provision for parts in item 646.92 covers only products which are chiefly used as parts of *locks*, not as parts of something else. Therefore, to determine how the cylinder plug in issue is dutiable, the classification of the article of which it is a part, i.e., the locking gas tank cap, must first be found.

The locking gas tank cap consists of: the cylinder plug; the cover portion—which includes the housing or barrel for the plug; and other components. They form one commercial entity—a locking gas tank cap—which serves to close the gas tank and to lock it. The locking mechanism is an integral and nonseparable part of the entire article. There is no component which is a lock *per se*.[4] This is because the individual identities and functions of the components have been subordinated to or merged in the identity and function of the combined entity. Therefore, the entire article—the locking gas tank cap—is an entirety for tariff purposes. *Donald Ltd., Inc.* v. *United States*, 32 Cust. Ct. 310 C.D. 1619 (1954); *F. B. Vandegrift & Co., Inc.* v. *United States*, 43 Cust. Ct. 22, C.D. 2097 (1959); *Miniature Fashions, Inc.* v. *United States*, 54 CCPA 11, C.A.D. 894 (1966).

In this connection, it is important to note that where an entirety has two functions which are co-equal, the article cannot be classed as one

---

[4] A lock in its common meaning is a device for fastening or securing an object and which is not capable of being opened except by a special key or combination. See e.g., Webster's *Seventh New Collegiate Dictionary* (1963); Funk & Wagnalls *New Standard Dictionary of the English Language* (1956); and *Dictionary of Technical Terms* (8th ed., 1957).

or the other. *V. Alexander & Company, Inc.* v. *United States*, 59 Cust. Ct. 510, C.D. 3212, 276 F. Supp. 573 (1967) ; *Castelazo & Associates et al.* v. *United States*, 61 Cust. Ct. 391, C.D. 3639, 294 F. Supp. 81 (1968). Thus in *Alexander* the court, after discussing cases involving combination and multifunction articles, stated (59 Cust. Ct. at 514, 276 F. Supp. at 576) :

> * * * An article will be excluded from its normal provision when, by virtue of joinder with another article, it becomes an inseparable part of a multifunction entity. That is to say, when the change undergone is no longer merely an evolutionary advance or the addition of a subsidiary auxiliary part, the changed article becomes more than that which it formerly was. * * *

It was there held that an article consisting of a shovel head and a pick head affixed to a single handle was an entirety classifiable as a hand tool and that the inseparable components could not be classified separately as a pick and as a shovel.[5]

In the present case the completed article is similarly a multifunction article, each of whose components is necessary to the function of the other. It is not a lock without the component that also serves as the cover and it is not a gas tank cap without the other components which complete the cap and lock it in place. Rather, it is a locking gas tank cap which replaces an ordinary cap that has no lock. This is to say that the locking gas tank cap is more than a lock; it is a gas tank cap with the added feature of a lock.

Moreover, it would seem evident that the provisions for locks in items 646.80–646.92 were not intended to cover combination articles having locking features in view of the fact that Congress found it necessary to specifically provide for luggage frames incorporating locks. Obviously, Congress did not believe that such frames would be classifiable as locks by reason of the incorporation of a locking feature and hence made specific provision therefor. No such provision was made, however, for gas tank caps which incorporate locking features and accordingly, they are not classifiable as locks under item 646.92.

Since the article of which the cylinder plug is a part is not a lock, it follows that the cylinder plug cannot be part of a lock dutiable under item 646.92. Therefore, following *Gallagher & Ascher Co.* v. *United States, supra,* 54 Cust. Ct. 141, such cylinder plugs are dutiable under item 692.25 as parts of motor vehicles. Also, since the keys are neces-

---

[5] By contrast, where one function of a combination article predominates, it is dutiable as the article having that function, *Astra Trading Corp.* v. *United States,* 56 Cust. Ct. 555, C.D. 2703 (1966) ; *Gehrig, Hoban & Co., Inc.* v. *United States,* 61 Cust. Ct. 344, C.D. 3628, 293 F. Supp. 433 (1968). In *Astra Trading,* merchandise consisting of two basic components, a flashlight and a screwdriver, was held to be an entirety on the ground that the components had no useful purpose separate and apart from the functions they served when combined. The court then found that the basic purpose of the article was as a screwdriver and that the addition of the illuminating feature did not take it out of classification as a screwdriver.

sary parts of the cylinder plugs, without which they would not and could not operate, they are classifiable under the same provision and not under item 646.92 as lock keys.

The protests are sustained. Judgment will issue to that effect.