(C.D. 4206)

IDEAL TOY CORPORATION *v.* UNITED STATES

---

## United States Customs Court, First Division

(Decided April 23, 1971)

*Sharretts, Paley, Carter & Blauvelt* (*Robert L. Follick* of counsel) for the plaintiff.

*L. Patrick Gray, III*, Assistant Attorney General (*Velta A. Melnbrencis* and *Urban S. Mulvehill*, trial attorneys), for the defendant.

Before WATSON, MALETZ, and RE, Judges

MALETZ, Judge: This case involves the proper tariff status of a spring-operated drive mechanism which is used to provide head movement in an animated doll. Each mechanism consists of a spring-wound motor and a bent shaft, both of which were manufactured in Switzerland and entered at the port of New York in 1965.

The importation was classified by the government under item 737.90 of the tariff schedules as a part of a toy and assessed duty at the rate of 35 percent. It is claimed by plaintiff to be properly classifiable as a spring-operated motor under item 660.80, dutiable at only 20 percent.

The pertinent statutory provisions are as follows:

Classified under:

Toys, and parts of toys, not specially provided for:

| | | |
|---|---|---|
| | * * * * * * * | |
| 737. 90 | Other _____ | 35% ad val. |

Claimed under:

Non-electric engines and motors not specially provided for, and parts thereof:

| | | |
|---|---|---|
| * * * * * * * | | |
| 660.80 | Spring-operated and weight-operated motors _____ | 20% ad val. |

Plaintiff does not dispute that the importation is chiefly used as a part of a toy. Its position is that by virtue of General Interpretative Rule 10(ij)[1] and headnote 1 of schedule 7, part 5, subpart E of the tariff schedules,[2] item 660.80—covering spring-operated motors—is a specific provision that describes the importation and thus prevails over item 737.90—the parts provision. Defendant's position is that since the motor is imported with a bent shaft, the article is

---

[1] This rule provides that "a provision for 'parts' of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part."

[2] This headnote specifies that "[t]he articles described in the provisions of this subpart (*except parts*) shall be classified in such provisions, whether or not such articles are more specifically provided for elsewhere in the tariff schedules, * * *." [Emphasis added.]

more than a motor and accordingly is not classifiable under item 660.80. The issue is thus whether the imported spring motor with the bent shaft is a "motor" within the meaning of item 660.80 or is more than a "motor."

The record shows that the motor in question is wound with a key or winding knob to get it to operate. The function of the motor is to slowly rotate the bent shaft. The bent shaft in turn gives a camming action to the head of the doll and lifts the body of the doll to give it a realistic, lifelike look. The camming action is accomplished by winding the spring which upon release turns the bent shaft by means of gears and a butterfly-type governor whose purpose is to avoid expending the power almost immediately and to maintain the same rate of torque so that the head of the doll may move uniformly.

The bent shaft in the present mechanism is threaded into a main shaft which is situated in the plastic case that houses the motor. Were the bent shaft straight, the field of energy would be a radial force around the shaft; by virtue of the bend in the shaft, the direction of this force is diverted into a camming action.

The one witness called at trial—plaintiff's toolroom superintendent—testified that all spring motors require some type of shaft and gears; that the bent shaft is merely an extension of the main shaft; and that its function is to transfer the power released by that spring into a usable form. He added that although a partial bend in the shaft is required, on occasion it became necessary to reform the shaft in the United States in order to obtain the required action. The witness further stated that although the motor could transmit power without the bent shaft, some other shaft or attachment would be required in order to utilize the power which is released. Finally, the witness testified that the bent shaft is required to utilize the power of the imported motor and that as such it is part of the motor.

On the basis of this record, it must be concluded that the imported drive mechanism is more than a motor due to the addition of the bent shaft and thus does not fall within the specific provision for "spring-operated motors." In the first place, the bent shaft is not an essential and required part of the spring-operated motor; rather, it is an essential and required part of the drive mechanism (and of the doll), but not of the motor. Put otherwise, there is a distinction between the motor—which is a source of mechanical power—and the bent shaft which is added to the motor to change the radial motion into a camming action. This is made clear by the following testimony (R. 25):

> Well, for instance, if I wanted to transmit the power in a simple, radial, circular motion rather than have a bent shaft, I would not put a bent shaft on, I would put a straight shaft on it or a gear shaft on it.

Relevant also on this aspect are the following questions and answers (R. 27) :

> Q. Would the spring motor operate without—or could it serve any useful purpose without the addition of a bent shaft or extension?
>
> \*     \*  .     \*     \*     \*     \*     \*
>
> A. Would it serve any purpose?
> Q. Could it?
> A. Yes. Definitely. Even without an extension.
> Q. But, would the power be transmitted in a useable form?
> A. Yes, yes. It would.
> Q. Without the bent shaft?
> A. That's correct.
> Q. Would some other attachment be required in order to use it?
> A. Yes.

What this testimony emphasizes is that the spring-wound motor is complete without the bent shaft. For in that form, the motor produces power in a usable form. To complete the motor, there is no need whatever for the bent shaft.

It is quite true that the bent shaft mechanism here involved is quite a simple one. However, this in no way detracts from the significance of its function—which is to divert the direction of the radial force into a camming action; and this function is quite different from the function of a protruding straight shaft which might be connected to and act as an extension of the main shaft to transmit power in a radial direction.

To sum up, the bent shaft was added to the motor in order to create the proper camming action for the doll. Hence, though simple in its operation, it is significant in the effect it achieves. *Cf. Gamble Vargish & Co.* v. *United States,* 57 Cust. Ct. 448, C.D. 2834 (1966). Further, the bent shaft does not complete the already existent motor, nor is it incidental or auxiliary to the motor's operation. *Cf. Schick X-Ray Co., Inc.* v. *United States,* 64 Cust. Ct. 430, C.D. 4013 (1970). To the contrary, the motor is complete with its main shaft and without the bent shaft. Thus the motor and bent shaft together comprise more than a motor; they comprise the major components of the doll's drive mechanism. See e.g., *Servo-Tek Products Co., Inc.* v. *United States,* 57 CCPA 13, C.A.D. 969 (1969) ; *United States* v. *The A. W. Fenton Company, Inc.,* 49 CCPA 45, C.A.D. 794 (1962) ; *James G. Wiley, Big Boy Mfg. Co.* v. *United States,* 63 Cust. Ct. 540, 547–48, C.D. 3950 (1969).

The protest is overruled, and judgment will be entered to that effect.