(C.D. 4352)

KAMI ENTERPRISES, INC. *v.* UNITED STATES

(Decided April 13, 1972)

*Glad & Tuttle* (*Edward N. Glad* of counsel) for the plaintiff.
*L. Patrick Gray, III*, Assistant Attorney General (*Susan C. Cassell*, trial attorney), for the defendant.

MALETZ, Judge: These two actions, which were consolidated for trial, involve importations from Japan via the port of Los Angeles that were described on the invoices as "Chrome Plated Locking Lug Nuts * * *." The importations were assessed by the government with duty of 12 percent under item 646.92, as modified by T.D. 68–9, as locks. Plaintiff claims that this assessment is in error and that the imports are properly assessable at the rate of 5.5 percent as parts of motor vehicles under item 692.27, as modified by T.D. 68–9.

The pertinent provisions of the tariff schedules, as modified, read as follows:

Classified under:

Locks and padlocks (whether key, combination, or electrically operated), luggage frames incorporating locks, all the foregoing, and parts thereof, of base metal; lock keys:
  Padlocks:

  Cabinet locks:

  Luggage locks, and parts thereof, and luggage frames incorporating locks_____ * * *

646.92   Other _____ 12% ad val.

Claimed under:

Chassis, bodies (including cabs), and parts of the foregoing motor vehicles:
  Bodies (including cabs) and chassis:

  Other:
    Cast-iron (except malleable cast-iron) parts, not alloyed and not advanced beyond cleaning, and machined only for the removal of fins, gates, sprues, and risers or to permit location in finishing machinery____ * * *

692.27   Other _____ 5.5% ad val.

The imports in issue consist of a three-piece assembly plus a key. Each assembly incorporates a barrel with internal threading that threads onto the wheel lug of an auto; an outer chrome cover; and a lock cylinder plug which is inserted into the barrel and cover. One inner portion of the barrel has the same size and amount of thread as an ordinary lug nut. The inner portion at the other end of the barrel is also threaded and holds the lock cylinder plug in place.

On small compact cars, four lug nuts are used to hold a wheel to the car, while on larger cars five lug nuts are used. The import takes the place of one of these four or five lug nuts and has two purposes— to hold the wheel to the car as a lug nut and to prevent theft of the wheel. It is installed in the following manner: Using the key, the lock cylinder plug and chrome cover are removed from the inner barrel. One of the conventional lugs is then removed from each wheel and in its stead "the wheel lock lug nut" of the barrel is screwed firmly on the wheel. Finally, the outside chrome cover and lock cylinder plug are replaced, and the key is removed from the lock.[1]

The import is optional equipment that is generally sold in sets of four and is considerably more expensive than a set of four ordinary lug nuts. The inner or nut portion of the import can be used alone as a lug nut but is rarely, if ever, used that way.

Against this background, defendant argues that while the "nut" portion of the assembly secures the wheel to the automobile, this is an incidental and *de minimis* function; the primary function of the import, according to the defendant, is to lock the wheel, and in order to perform its intended function as a lock, the import had to be constructed in such a way as to provide a means of connection. In short, in defendant's view, the unit as a whole has only one function—a lock function—with the added subordinate feature that one part serves a "nut" function.[2] We do not agree. To the contrary, we think it clear that the present article is an entirety that has two functions that are co-equal—to hold the wheel to the car as a lug nut and to prevent the theft of the wheel. As defendant asserts in its answer to the complaint (par. 16), "the subject merchandise both secures the wheel to the chassis of an automobile, and prevents theft of the wheel."[3] In

---

[1] See plaintiff's exhibit 3 and defendant's exhibit A.

[2] "A lock in its common meaning is a device for fastening or securing an object and which is not capable of being opened except by a special key or combination." *Gallagher & Ascher Company* v. *United States*, 63 Cust. Ct. 223, 226, n. 4, C.D. 3899 (1969).

[3] Defendant places considerable reliance on the testimony of its witness—a locksmith— who expressed the opinion that the importation is a lock "because all three parts are needed to operate it so that it cannot be removed." (R. 52) He added that the importation did not contain an element of a nut. (R. 55) Later, however, he modified his testimony and conceded that the inner portion of the import acted as a lug nut (R. 60) and was commonly referred to as a nut. (R. 58) Finally, he answered in the affirmative when asked by defendant's counsel whether in his opinion the primary purpose of the import was that of a lock. Considering the witness' demeanor on the witness stand, the modifications in his testimony and the statement by defendant's counsel that the witness was an expert in locks but not in nuts (R. 56), the court is of the view that this witness' testimony is entitled to little, if any, probative weight.

this context, the present import bears considerable similarity to the locking gas tank cap in *Gallagher & Ascher Company* v. *United States, supra,* 63 Cust. Ct. 223, which served to close the gas tank and lock it, and thus to keep the gasoline inside the tank and prevent theft of the fuel. First noting that the locking gas tank cap was an entirety for tariff purposes, the court concluded that its two functions were co-equal and thus as a multifunction article, it could not be classified as a lock or a gas tank cap. See e.g., *V. Alexander & Company, Inc.* v. *United States,* 59 Cust. Ct. 510, C.D. 3212, 276 F. Supp. 573 (1967). In these circumstances, the court in *Gallagher & Ascher* held that parts of the locking gas tank cap, i.e., the lock cylinder plugs with keys, were improperly classified by the government under item 646.92 as parts of locks and lock keys but rather were properly classifiable under item 692.27 as parts of motor vehicles.

As in *Gallagher & Ascher,* the present importation is a complete multifunction article, each of whose components is necessary to the function of the other. It is not a lock without the component that also serves as a lug nut, and it is not a lug nut without the other components which lock it in place. Thus, the present article is more than a lock and more than a lug nut.

Equally applicable here also is the following further comment in *Gallagher & Ascher* (63 Cust. Ct. at 227) :

> Moreover, it would seem evident that the provisions for locks in items 646.80–646.92 were not intended to cover combination articles having locking features in view of the fact that Congress found it necessary to specifically provide for luggage frames incorporating locks. Obviously, Congress did not believe that such frames would be classifiable as locks by reason of the incorporation of a locking feature and hence made specific provision therefor. No such provision was made, however, for gas tank caps which incorporate locking features and accordingly, they are not classifiable as locks under item 646.92.

It is to be added that articles similar to the present importations are represented in the trade material of plaintiff's distributee—one of the largest wheel manufacturers in the country—as "Locking Lug Nuts." On the other hand, similar articles are represented by other sellers as "Wheel Locks" or "Wheel Lock Sets." [4] In either event, the manner in which sellers market their goods—while relevant—is not determinative. E.g., *Davis Products, Inc., et al.* v. *United States,* 59 Cust. Ct. 226, 230, C.D. 3127 (1967). It is concluded, in short, that the importations are not classifiable as locks under item 646.92.

---

[4] One distributor represents the articles on their cardboard containers as "Wheel Locks" and adds that it "Replaces One Lug Nut on Each Wheel." The reverse side of this container sets forth directions for installing the articles and states in part "[s]crew *wheel lock lug nut on wheel* firmly * * *." [Emphasis added.] See defendant's exhibit A and note 1, *supra.*

Coming now to plaintiff's affirmative claim that the importations are classifiable as parts of motor vehicles, it is clear from the record that the articles are not cast iron and that they are designed for and exclusively used on automobile wheels. On this latter phase, to paraphrase what this court said in *Gallagher & Ascher Company* v. *United States*, 54 Cust. Ct. 141, 145–46, C.D. 2522 (1965), it is an undeniable fact that a lug nut is necessary for the safe operation of the automobile. And whereas there is an option on the part of the automobile owner as to whether or not to use the imported "wheel lock lug nut," when the automobile owner elects to use such an article, the device becomes part of the article for which it was designed and with which it was intended to be used. To quote from the appeals court decision in *Gallagher & Ascher Company* v. *United States*, 52 CCPA 11, 16, C.A.D. 849 (1964), "[w]hen once attached to the automobile to which it was solely dedicated and in the manner disclosed, and in the performance of the function for which it was designed, it became part of the automobile * * *." See also e.g., *United States* v. *Antonio Pompeo*, 43 CCPA 9, C.A.D. 602 (1955) ; *Mattel, Inc.* v. *United States*, 61 Cust. Ct. 75, 82–84, C.D. 3531, 287 F. Supp. 999, 1004–06 (1968).

For the foregoing reasons, plaintiff's claim that the imports are properly assessable at the rate of 5.5 percent as parts of motor vehicles under item 692.27 is sustained. Judgment will be entered accordingly.