(C.D. 4049)

EDO COMMERCIAL CORP.
F. W. MYERS & CO., INC. } *v.* UNITED STATES

United States Customs Court, First Division

(Decided July 23, 1970)

*Barnes, Richardson & Colburn* (*Peter J. Fitch* of counsel) for the plaintiffs.
*William D. Ruckelshaus*, Assistant Attorney General (*Herbert P. Larsen* and *Andrew P. Vance*, trial attorneys), for the defendant.

Before WATSON, MALETZ, and RE, Judges

MALETZ, Judge: This case involves an importation from Canada in 1966 of certain instruments known as transducers. They were assessed duty by the government at the rate of 50 percent ad valorem under the provisions of item 712.12 of the Tariff Schedules of the United States as parts of ships' depth-sounding instruments and apparatus.[1]

---

[1] Schedule 7, Part 2, Subpart D:
Electrical measuring, checking, analyzing, or automatically-controlling instruments and apparatus, and parts thereof:

 * * * * * * *

Other:
Ships' logs, and depth-sounding instruments and apparatus, and parts thereof:

 * * * * * * *

712.12 Parts _____ 50% ad val.

Plaintiffs do not dispute that the transducers are parts of depth-sounding instruments. See *Marconi International Marine Communications Co., Ltd.* v. *United States*, 30 Cust. Ct. 162, C.D. 1515 (1953). Cf. *Border Brokerage Co., Inc.* v. *United States*, 59 Cust Ct. 316, C.D. 3151 (1967). Their claim, rather, is that the transducers are specifically provided for under item 684.70 as microphones, dutiable at 15 percent,[2] and that in that circumstance general interpretative rule 10(ij) of the tariff schedules[3] requires their classification under that item.[4] Thus, the single issue is whether the imported transducers are microphones within the meaning of item 684.70.

The evidence shows that the transducers are parts of sonar sounding sets which are chiefly used by the U.S. Navy. The sets consist of a sonar receiver-transmitter, a transducer and interconnecting cables and are designed to measure and visually indicate or record water depths. Depth information is presented either by an indicator consisting of a cathode ray tube or by a recorder which transcribes depths on calibrated paper.

The transducer converts a pulse of electrical energy into sound energy and transmits such sound energy downward into the water. When the sound strikes the bottom of the water (or any other object having acoustical properties different from those of water), a portion of the sound is reflected back to the transducer as an echo which, in turn, is reconverted by the transducer to electrical energy for presentation either to a cathode ray tube or a recorder. Since the speed of sound in water is virtually constant, the amount of time that elapses between the transmission of the electrical impulse and the reception of its echo is a measure of the distance traveled or depth.

The transducer in issue operates through piezoelectric activity. This involves the deformation of a crystal (or ceramic) which deformation generates an electric charge in direct proportion to the amplitude of the deformation. The resultant piezoelectric effect is reversible—which means in terms of the imported transducer that not only can it convert electrical energy into sound energy, it also can perform the reverse effect of reconverting sound energy into electrical energy.

---

[2] Schedule 6, Part 5:
684.70 Microphones; loudspeakers; head phones; audio-frequency electric amplifiers; electric sound amplifier sets comprised of the foregoing components; and parts of the foregoing articles (including microphone stands) _____ 15% ad val.

[3] General Interpretative Rule 10 reads in part:
(ij) a provision for "parts" of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part.

[4] Plaintiffs claimed, in addition, that the imports are "depth-sounding instruments" under item 712.10 of the tariff schedules. This claim, however, was not argued in plaintiffs' brief and is, therefore, deemed abandoned. A further claim under item 807.00 as American goods returned was abandoned before trial.

Against this background, the first problem is to determine the common meaning of the term "microphone," as used in item 684.70. Helpful are the following sources:

*Webster's Third New International Dictionary of the English Language* (1963):

> microphone n: an instrument whereby sound waves are caused to generate or modulate an electric current usu. for the purpose of transmitting or recording speech or music.

*Webster's New World Dictionary of the American Language, College Edition* (1962):

> microphone n. an instrument for intensifying weak sounds or transmitting sounds by transforming sound waves electromagnetically into variations of an electric current: microphones are used in telephony, radio, etc.

8 *McGraw-Hill Encyclopedia of Science and Technology*, p. 358 (1966):

> Microphone – An electroacoustic device containing a transducer which is actuated by sound waves and delivers essentially equivalent electric waves.

*Encyclopaedia Britannica*, Vol. 15, p. 380 (1970):

> MICROPHONE, a device for converting acoustic power into electric power which has essentially similar wave characteristics. * * *

> * * * Microphones for receiving underwater acoustic waves are generally known as hydrophones. * * *

Assisted by these authorities, we conclude that a microphone in its common meaning is an instrument or device which converts sound waves into electrical signals for further transmission.

This brings us to plaintiffs' claim. Plaintiffs point out that there is a class of microphones known as "piezoelectric microphones" which, utilizing the piezoelectric effect, are capable not only of performing the function of a microphone—i.e., converting sound energy into electrical energy—but also of performing the reverse function of changing electrical energy into sound energy. Plaintiffs add that piezoelectric microphones are a type of microphone described in item 684.70 as evidenced from the fact that they are specifically mentioned in the Explanatory Notes to heading 85.14 of the *Brussels Nomenclature*. They further point out that their expert witness testified that he considered the imported transducers to be microphones because they function in exactly the same way as piezoelectric microphones and have identical working or moving parts which operate in the same manner as piezoelectric microphones. From this, plaintiffs conclude that al-

though the transducers at issue are reversible, they are simply a type of microphone—i.e., a piezoelectric microphone.[5]

We turn now to the *Brussels Nomenclature* whose provisions are crucial to plaintiffs' case. Heading 85.14 provides for:

MICROPHONES AND STANDS THEREFOR; LOUDSPEAKERS; AUDIO-FREQUENCY ELECTRIC AMPLIFIERS.

The Explanatory Notes under this heading state as follows:

This heading covers microphones, loudspeakers and audio-frequency electric amplifiers of all kinds imported separately, regardless of the particular purpose for which such apparatus may be designed (e.g., telephone microphones and radio receiver loudspeakers).

The heading also covers sound amplifier sets consisting of the three elements mentioned above.

### (A) MICROPHONES

These instruments convert sound vibrations into corresponding variations or oscillations of electric current, thus enabling them to be transmitted, broadcast or recorded. They include:

 \* \* \* \* \* \* \*

(2) Piezo-electric microphones, in which the pressure of the sound waves, transmitted by means of a diaphragm, sets up strains in a specially cut piece of crystal (e.g., quartz or rock crystal), thus causing the production of electric charges on the crystal.

 \* \* \* \* \* \* \*

There are many varied applications of microphones (e.g.:—in public address equipment; telephony; sound recording; aircraft and submarine detectors; trench listening devices; study of heart beats).

 \* \* \* \* \* \* \*

### (B) LOUDSPEAKERS

The function of loudspeakers is the converse of that of microphones: they reproduce sound by converting electrical variations or oscillations into mechanical vibrations which are communicated to the air. They include the following types:

 \* \* \* \* \* \* \*

(2) Piezo-electric loudspeakers, based on the principle that certain natural or artificial crystals are subject to mechanical

---

[5] As noted by plaintiffs, in Gayford, *Acoustical Techniques and Transducers*, p. 46 (Macdonald & Evans Ltd., London, 1961), the following statement is made in regard to the reversibility of transducers:

Most of our transducers are basically reversible, e.g., a microphone will function to some extent as a loudspeaker. If they are well designed they will be reasonably linear over their working ranges; that is the ratio of energy received to energy passed on will be substantially independent of the operating level.

distortion when an electric current is applied to them. Such loudspeakers are usually known as "crystal loudspeakers".

\* \* \* \* \* \* \*

From these Explanatory Notes, it is evident (1) that under the *Brussels Nomenclature* piezoelectric *microphones* are instruments whose function is to convert sound waves into electrical current: and (2) that piezoelectric *loudspeakers* are instruments whose function—converse to that of microphones—is to convert electrical current into sound waves. However, because of the piezoelectric effect, the piezoelectric microphone is capable not only of converting sound into electricity, it has the reverse capability of converting electricity into sound. By the same token, the piezoelectric loudspeaker is capable, by virtue of the piezoelectric effect, not only of converting electricity into sound, it has the reverse capability of converting sound into electricity.

What this comes down to is that because of their piezoelectric properties, piezoelectric microphones and loudspeakers have the same capabilities. In such circumstances, it seems obvious that the differentiation as between the two under the *Brussels Nomenclature* is that where the *primary function* of the piezoelectric instrument is to convert sound to electricity, it constitutes a piezoelectric *microphone;* and conversely, that where the *primary function* of the instrument is to convert electricity to sound, it constitutes a piezoelectric *loudspeaker.* Otherwise, there would be no reason for the inclusion in the *Brussels Nomenclature's* Explanatory Notes of separate and distinct provisions for piezoelectric microphones and for piezoelectric loudspeakers.

Coming now to the present case, the primary function of the transducer is not to convert sound to electricity or to convert electricity to sound. Rather, it has two coequal functions: the conversion of electricity to sound and the reconversion of sound to electricity so that it is more than a microphone and, for that matter, more than a loudspeaker. And where an article "has two functions which are coequal, the article cannot be classed as one or the other." *Gallagher & Ascher Company* v. *United States,* 63 Cust. Ct. 223, 226–7, C.D. 3899 (1969). See also *V. Alexander & Company, Inc.* v. *United States,* 59 Cust. Ct. 510, C.D. 3212, 276 F. Supp. 573 (1967) ; *Castelazo & Associates et al.* v. *United States,* 61 Cust. Ct. 391, C.D. 3639, 294 F. Supp. 81 (1968).

Beyond this, there are several other reasons why the claim lacks merit. As we have seen, it is plaintiffs' position that piezoelectric instruments which are capable of converting electricity into sound and vice versa constitute microphones. Were that position to be accepted, it would necessarily follow that since all piezoelectric instruments have reversible capabilities, they would have to be classified as microphones. But such a result would be clearly inconsistent with the Ex-

planatory Notes to heading 85.14 of the *Brussels Nomenclature* which—as previously discussed—make a clear distinction—based on function—as between piezoelectric microphones and piezoelectric loudspeakers. Acceptance of plaintiffs' position would, in addition, make a nullity of the *Brussels Nomenclature*'s Explanatory Note provision for piezoelectric loudspeakers since, under plaintiffs' reasoning, such loudspeakers would be classifiable as microphones. Moreover, considering that the transducer converts electric energy into sound energy and vice versa, it would be just as logical, under plaintiffs' rationale, to classify the transducer as a piezoelectric loudspeaker as it would be to classify it as a piezoelectric microphone.

Finally, it is to be noted that there are a variety of transducers which rely on the piezoelectric effect for their operation. As pointed out in 10 *McGraw-Hill Encyclopedia of Science and Technology*, p. 217 (1966):

> Transducers using piezoelectric elements are used for converting vibrations into electrical signals, and are used in such applications as crystal microphones, phonograph pickups, vibration pickups, and dynamic pressure-sensing elements. The inverse piezoelectric effect is used for converting electrical signals into mechanical vibrations. Thus, piezoelectric transducers are used in such applications as underwater sound ranging equipment (sonar, asdic), and in ultrasonic cleaning devices, which use a liquid medium for washing small medium-sized objects.

However, under plaintiffs' argument, all instruments which are capable of converting electricity into sound and vice versa through the piezoelectric effect would constitute microphones for tariff purposes. This would create the anomaly of making it necessary to classify as microphones articles such as phonograph pickups, vibration pickups, dynamic pressure-sensing elements, and ultrasonic cleaning devices—all of which have reversible capability through utilization of the piezoelectric effect.

The protest is overruled. Judgment will be entered to that effect.