QUIGLEY AND MANARD, INC. v. UNITED STATES

---

50

Court Nos. 68/45406, etc.

(Decided August 27, 1975)

*Lincoln & Stewart* (*Frederick L. Ikenson* of counsel) for the plaintiff.
*Rex E. Lee*, Assistant Attorney General (*James Caffentzis* and *David A. Ast*, trial attorneys), for the defendant.

LANDIS, Judge: The issue in this case is whether certain merchandise imported from Canada and described in the customs entry papers as television coils was properly classified by customs as inductors under TSUS item 682.60, dutiable at 15% ad valorem, or should be classified as contended by plaintiff as parts of television apparatus under TSUS item 685.20, dutiable at 10% ad valorem.

This action involves ten protests consolidated for trial. The television coils described on the entry papers are identified by part numbers, this litigation being limited to part numbers 73B45–243, 73B53–251, 73C55–27, and 73C46–21.

In the pleadings defendant admits that the coils were delivered to the Admiral Corporation, Harvard, Illinois; that the coils "are dedicated for use in the video IF [intermediate frequency] section of a television receiver, and are designed to block the passage of a signal of a specified measurement in megahertz" and that "[t]he imported article is a self-resonant coil which electrically is comprised of an inductance in parallel with a distributed capacitance designed so that the desired self-resonant frequency is achieved to enable the device to operate as a filter to block the passage of certain frequencies." (Defendant's answer, No. 8.) Since defendant admits that the coils are dedicated parts of a television receiver, the only question to be determined is whether they are the article specifically provided for in TSUS as inductors.[1]

The trial record consists of the so-called official customs entry papers, nine exhibits,[2] and the testimony of two witnesses for plaintiff. Defendant introduced no evidence.

There is, in this record, no exhibit physically representative of the imported coils in the condition imported. The court is, therefore, put to the conception that the imported coils are windings of wire wound in a manner that fits them for a particular use in the IF video section of a television receiver.

To a substantial degree, the testimony of record involves the electrical properties of resistance, inductance, and capacitance, the electrical principles associated with those properties, and the manner in which those properties are employed in electronic circuits. None of what is next discussed about those properties is materially disputed.

All electronic components and circuits have the said three properties, resistance, inductance, and capacitance. Even a straight piece of wire has all three properties. None of those properties can be entirely gotten rid of in any component or circuit. Each of the prop-

---

[1] TSUS provides that, as a matter of law:

10. General Interpretative Rules. For the purposes of these schedules—

• • • • • • •

(ij) a provision for "parts" of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part.

[2] Exhibits 1, 2, 3, 4, 6, 7, and 8, prepared by plaintiff's witness Vincent Friberg, chart or diagram certain undisputed electronic circuit principles about which he testified. A physical exhibit, exhibit 5, is identified as an electronic filter (parallel resonant circuit) containing a discreet coil and a discreet capacitor enclosed in a housing. Collective exhibit 9 (9–A, 9–B, 9–C, and 9–D) are manufacturer's prints specifying, among other things, the electrical and mechanical parameters to be incorporated into the design of the imported coils.

erties to a certain extent can, however, be controlled. Common types of control include choice of wire (size, type of metal, etc.), of insulation, of dielectric, of impregnating material, wire tension, and wire coiling. The three properties are electrically measurable. Resistance is measured in "ohms". Inductance is measured in "henrys". Capacitance is measured in "farads". The properties of inductance and capacitance also offer opposition to the flow of alternating current. The technical term for this opposition is "reactance". The reactance offered by inductance is called "inductive reactance". The reactance offered by capacitance is called "capacitive reactance". Like resistance, reactance is measured in "ohms". The electronic term for the total opposition offered by the resistance and the reactance of a component or circuit is "impedance", also measured in "ohms".

The imported television coils in this case have the three properties, resistance, inductance, and capacitance. The capacitance of a coil is technically called "distributed capacitance" also known as "self capacitance". Distributed capacitance is defined as any "capacitance not concentrated within a capacitor, such as the capacitance between the turns in a coil or choke, or between adjacent conductors of a circuit." [3] Coiling a wire increases its inductance considerably. Some coils have a core of powdered iron or ferrite material. The core increases the inductance but has a very slight affect on the distributed capacitance of the coil. It is certain that two of the imported coils have a core. It is uncertain as to whether the other two coils do or do not have a core.

The prints furnished to the manufacturer of the imported coils (exhibit 9) support the testimony that these coils were designed and wound to have a specified value of inductance and specified resonant frequency. Frequency, which is the number of cycles of an alternating current nature which occur per second, is measured in "hertz". The prints for two of the coils (part Nos. 73B53–251 and 73B45–243) bear the designation "R. F. Choke Coil".[4] The specifications for the other two coils (part Nos. 73C46–21 and 73C55–27)[5] appear on prints bearing the designation "Peaking Coil".[6]

[3] Graf, *Modern Dictionary of Electronics* (4th ed. 1972) (hereinafter Graf-*Electronics*).

[4] An "R. F. Choke Coil" is defined as a coil designed to have a high inductive reactance at radio frequencies and used to prevent currents at these frequencies from passing from one circuit to another. Graf-*Electronics*.

[5] Part No. 73C55–27 is associated with a print numbered 73D55 (exhibit 9–D). The discrepancy in letters is not explained in the record.

[6] A "peaking coil" is defined as a "small coil placed in a circuit to resonate with the distributed capacitance of the circuit at a frequency for which peak response is desired, as in a video amplifier near the cutoff frequency." Cooke and Markus, *Electronics and Nucleonics Dictionary* (1960).

Plaintiff's principal witness, Mr. Vincent Friberg, an electrical engineer and director of engineering, General Instrument Corp., Automatic Manufacturing Division, Chicopee, Mass.,[7] testified that in addition to the inductance value and self-resonant frequency specified in the prints (exhibit 9), the imported coils have distributed capacitance. The latter property, he stated, is not specified in the prints because the distributed capacitance of the imported coils can be calculated from the specified inductance value and resonant frequency.

Mr. Friberg expressed the opinion that the print designation "R. F. Choke Coil" was a misnomer. Coils designated to have a specified inductance value and a specified resonant frequency, he said "should properly be called self-resonant chokes." He stated that "[t]he expression 'R. F. choke' is used variously to denote sometimes an inductor by certain people and others use it to denote a self-resonant device." It is not, he said, "a term that is really too vigorously applied." A peaking coil, according to Mr. Friberg, is typically used as an inductor. In his opinion, the two coils covered by the prints bearing that designation are self-resonant chokes, not peaking coils, because the specifications for both coils indicate a specified value of inductance and a specified resonant frequency. He admitted that all coils have a self-resonant frequency; that you specify resonant frequency if you want that frequency, although you might also specify a resonant frequency not to exceed a certain value if you want "pure inductance". Mr. Friberg further testified that to obtain a specified resonant frequency distributed capacitance must be controlled very accurately, and the self-resonant frequency is achieved in considerable difficulty for a particular purpose at considerable expense. There is, he stated, no point in specifying a resonant frequency if the coil is not to be used at that frequency point. Logically, he knew of no area where the specified resonant frequencies of the imported coils would be used except in television receivers.

Addressing himself to the imported coils, Mr. Friberg stated that they are sometimes called "choke" coils and that they are the equivalent of a parallel resonant circuit, consisting of an inductor and a capacitor, in which the "reactance" of each is the important characteristic. These imported coils, he said, do not need a capacitor to function at resonant frequency because the inductance and distributed capacitance built into the coils tune them to a self-resonant frequency and, at that frequency, the inductance and distributed capacitance are of equal importance.

[7] General Instrument of Canada, manufacturer of the imported coils, is a division of Mr. Friberg's company.

Distributed capacitance in a device that is nominally an inductor, Mr. Friberg stated, is generally considered undesirable, and while distributed capacitance cannot be gotten rid of in an inductor, attempt is made to keep the measurable distributed capacitance of an inductor at a minimum amount. In coils, he said, distributed capacitance varies tremendously and it is necessary to use different configurations in winding the coils to obtain the various distributed capacitances required. However, he admitted that the same techniques are used to decrease distributed capacitance as are used to increase distributed capacitance. It is, he stated, more difficult to control distributed capacitance than inductance. He acknowledged that the imported coils could be used as inductors in a circuit that would favor low-frequency signals and block high-frequency signals. At low frequencies the imported coils would be the inductor element of a filter circuit.

Asked the difference between a coil designed to be used at its self-resonant frequency and a coil not so designed, he testified that "a coil designed to be used on a self-resonant frequency develops a high impedance at that frequency and at a range of frequencies about that resonant point. It is used in a circuit to block the passage of signals in that frequency range * * * for purposes of circuit stability, to prevent regeneration at these frequencies, and to eliminate undesired interaction between these frequencies and other signals." At resonant frequency, Mr. Friberg stated, a self-resonant choke develops a high impedance of a resistive character; below the self-resonant frequency, the choke is inductive and above the self-resonant frequency, the choke is capacitive. He also testified that he knew generally how the imported coils are used in a television receiver, but he did not know "specifically in the particular circuit how * * * [they are] used."

Mr. Peter Orne, a consultant in electrical engineering and television, testified that his background included work on the circuit design and testing of all different circuits in a television receiver. He stated that he was familiar with the general class of self-resonant coils imported in this case and used in television sets. Mr. Orne explained that a television receiver is a superheterodyne receiver; that the small signal picked up by the antenna is received into a tuner; that the tuner transforms the incoming frequency signal to an intermediate frequency called IF frequency; that the purpose of a superheterodyne receiver is to get a "high gain" in the IF frequency economically; that to get a "high gain" requires a fixed IF frequency; that the IF frequency is fed into a detector which receives the intelligence from the complete signal; that in the detector a number of unwanted frequencies are created which must be eliminated, and that self-

resonant chokes are used to eliminate the unwanted frequencies, primarily harmonics of the intermediate frequency and the IF frequency itself. He testified that two of the filters (imported coils 73C55–27 and 73B45–243) have a self-resonant frequency at 65 megahertz which puts them exactly in the middle between the fundamental IF frequency and the second harmonic and they are effective in eliminating both the fundamental and second harmonic of the IF frequency from the output of whatever circuit they are placed in. Coil 73B53–251, with a self-resonant frequency of 44 megahertz, he stated, is used as the return of the detector where the purpose is to have maximum output at the signal frequencies and minimum output at undesired frequencies. Coil 73C46–21, which has a specified self-resonant frequency of 21.6 megahertz, Mr. Orne testified, relates to the "beat" of the carrier frequency with the IF frequency and one such beat falls into the range of 21.6 megahertz. He corroborated Mr. Friberg's testimony that the imported coils are used at their specified resonant frequencies; that they act basically as a tune circuit, which means that they are a combination of a capacitor and an inductor; that the coils are in part inductors and capacitors; that at the operating resonant frequency the capacitive and inductive properties are of equal importance, and that in his experience with self-resonant chokes the manufacturer was permitted wider tolerances than specified for inductance, but no greater tolerance than specified for the parameter of interest, namely, self-resonant frequency.

Relying on the undisputed fact that the inductive reactance and distributed capacitance reactance are of equal importance at the resonant frequency wherein the imported coils are designed to function in the video IF section of a television receiver, plaintiff argues that the imported coils are "more than inductors", citing *Edo Commercial Corp.* v. *United States,* 65 Cust. Ct. 30, C.D. 4049 (1970). The "more than" doctrine, however, is not a clear-cut rule of classification, and "it appears that each case must in the final analysis be determined on its own facts." *E. Green & Son (New York), Inc.* v. *United States,* 59 CCPA 31, 34, C.A.D. 1032, 450 F. 2d 1396 (1971). The device in the *Edo* case was found to function as a microphone and a loudspeaker. On that factual basis, the court held that the device was not classifiable either as a microphone or a loudspeaker, but was properly classifiable as part of a depth sounding instrument in which the device performed co-equally as a microphone and loudspeaker.

The entire "more than" argument in this case seems to relate to whether the imported merchandise is an inductor as contended by defendant, or also a capacitor as contended by plaintiff. The evidence

from witnesses Friberg and Orne solely establishes that at the resonant frequency of these imported coils the inductive reactance and the distributed capacitive reactance of the coils are of equal importance. No one has professed to say or argue that the imported coils can function as pure capacitors.[8] As defendant points out, however, the imported coils, as do all coils and, for that matter, all inductors, possess inductance and distributed capacitance and have a resonant frequency. Inductive reactance is measured in ohms and it is obviously related to inductance, but inductance per se is measured in henrys so the two apparently are not the same thing. The same can be said for capacitive reactance. It, also, is measured in ohms and related to capacitance. But capacitive reactance measured in ohms is not shown to be the same thing as capacitance measured in farads. While reactance is somehow related to inductance and capacitance, plaintiff's emphasis on inductive reactance and capacitive reactance does not begin to establish how that reactance works in terms of inductance which is the property that opposes a change in current and induces electromotive forces in a circuit, and capacitance which is the property that permits the storage of electricity. Further, as one independent authority states, in determining resonant frequency the separate values of inductance and capacitance do not matter because the product of those properties is the quantity which fixes the critical frequency. Thus a circuit with 0.24 henry of inductance and 10 microfarads of capacitance will be resonant at the same frequency as one which has 0.06 henry of inductance and 40 microfarads of capacitance.[9]

Mr. Friberg's testimony that a coil with inductance and distributed capacitance is an inductor at frequencies below resonance, and a capacitor at frequencies above resonance is, I assume, based on electronic circuit theory. But no independent authority that I have consulted persuasively leads me to conclude that because in circuit theory an inductance coil has a capacitive reactance at higher frequencies, the equivalent of a pure capacitor, that it is not an inductance coil.[10]

Analyzing plaintiff's rather conceptually loose reliance on the interplay of inductive reactance and capacitive reactance of a coil at

[8] A *capacitor* is a device "consisting essentially of two conducting surfaces separated by an insulating material or dielectric such as air, paper, mica, glass, plastic film, or oil. A capacitor stores electrical energy, blocks the flow of direct current, and permits the flow of alternating current to a degree dependent essentially upon the capacitance and the frequency." Graf-*Electronics, supra.*

[9] Morecroft, *Principles of Radio Communication* (3d ed. 1933), page 81.

[10] Graf-*Electronics, supra; Electronics and Nucleonics Dictionary, supra;* Terman, *Electronic and Radio Engineering* (4th ed. 1955); *Principles of Radio Communication,.supra;* Upton, *Electronics for Everyone* (1959); Van Valkenburgh, Nooger & Neville, Inc., *Basic Electronics,* Vols. 1–5 (1st ed. 1955).

resonant frequency,[11] one must finally consider the term "choke",[12] which Mr. Friberg stated is applicable to these imported coils, and the useful characteristic of these imported coils at self-resonant frequency, namely, their reactance. A reactance coil is a "reactor".[13] The terms "choke" and "reactor" are both legislatively recognized exemplars of inductors.

The *eo nomine* classification of inductors, electrical capacitors (item 685.80), and resistors (item 686.10) appears for the first time in TSUS. TSUS does not classify reactors *eo nomine*. The TSUS superior headings classifying inductors, electrical capacitors and resistors are, however, substantially the same as the Brussels Nomenclature headings 85.01, 85.18, and 85.19 classifying inductors, electrical capacitors and resistors. The Brussels Nomenclature does not classify "reactors" *eo nomine*. The Tariff Classification Study of TSUS gives no history of what Congress intended to be covered by the term "inductors". Since the Brussels Nomenclature exerted the greatest influence on the arrangement of TSUS,[14] it appears that the term was derived from the Brussels Nomenclature. The Brussels explanation of the term "inductors" is, therefore, persuasive history of what Congress intended when it used the same term in TSUS. *Herbert G. Schwarz, dba Ski Imports* v. *United States*, 57 CCPA 19, 22, C.A.D. 971, 417 F. 2d 1391 (1969). Brussels Nomenclature heading 85.01, in an explanatory note, relevantly headed, states as follows:

### (VI) Inductors (e.g., Reactors and Chokes)

These consist essentially of a single coil of wire which, inserted in an A.C. circuit, limits or prevents by its self-induction the flow of the A.C. They vary from small chokes used in wireless circuits, instruments, etc., to large coils often mounted in concrete, used in power circuits (e.g., for limiting the flow of current in the event of a short circuit). [Explanatory Notes to the Brussels Nomenclature (1955), Vol. III, page 928.]

---

[11] Conceptually loose because there is no factual evidence and none of the authorities I have consulted tend to counter the presumption that the inductive and capacitive reactance forces of a coil flow from or are the result of induced electromagnetic forces. *Cf. Knowles Electronics* v. *United States*, 62 CCPA 1, C.A.D. 1134 (1974).

[12] The term "choke" is defined as an "inductance used in a circuit to present a high impedance to frequencies above a specified frequency range without appreciably limiting the flow of direct current. Also called choke coil." *Electronics and Nucleonics Dictionary, supra.* A choke coil also called "impedance coil" is defined as "an inductor (reactor) used to limit or suppress the flow of alternating current without appreciable effect on the flow of direct current." Graf-*Electronics, supra.*

[13] *Webster's Third New International Dictionary* (1968). The term "reactor" is defined as a "device that introduces either inductive or capacitive reactance into a circuit such as a coil or capacitor." *Electronics and Nucleonics Dictionary, supra,* and as a "physical device used primarily to introduce reactance or susceptance into a branch." Graf-*Electronics, supra,* see also, *Webster's Third New International Dictionary* (1968), and compare, "reactor * * * 3: a coil, winding, or conductor of small resistance and large inductance used in an alternating-current circuit to impede or throttle the current or to change its phase" with, "inductor * * * 2a: an inductance coil or reactor".

[14] Tariff Classification Study, Submitting Report, page 8.

Weighing the evidence that the useful characteristic of these imported coils in the video IF section of a television receiver is their "reactance" at resonant frequency; that a reactance coil is a "reactor", and that in the lexicon of electronics as well as the legislative history, the terms "choke", "reactance", and "reactor" appear to be more closely associated with inductance and "inductors", than with capacitance and "capacitors", I conclude that plaintiff has failed to overcome the presumption of correctness attaching to the classification of these imported coils as inductors. The protests herein consolidated are, accordingly, overruled and the action is dismissed.

Judgment will enter accordingly.