CRAIG CORPORATION *v.* UNITED STATES

Court No. 72-5-00966

(Decided December 18, 1975)

*Stein and Shostak* (*James F. O'Hara* of counsel) for the plaintiff.

*Rex E. Lee,* Assistant Attorney General (*Andrew P. Vance and John J. Mahon,* trial attorneys), for the defendant.

WATSON, Judge: This case places in issue the tariff consequences of the presence of an "on-off" switch on certain imported microphones designed for use with tape recorders. Plaintiff claims that the presence of the switch makes them *more than* microphones and precludes defendant's classification of the importations as microphones under item 684.70 of the Tariff Schedules of the United States, as modified by T.D. 68-9.[1] Plaintiff seeks classification of these articles as parts of tape recorders[2] under item 685.40 of the TSUS, as modified, *supra.*[3]

Although the importations are indisputably parts of tape recorders, General Interpretative Rule 10(ij) states that in the tariff schedules a

[1] As classified the rates of duty would be 12, 10 or 9 percent ad valorem, depending on the dates of entry.

[2] Plaintiff's claim for classification as electrical articles, etc. under item 688.40 of the TSUS, as modified, *supra,* was abandoned and is, accordingly, dismissed. Plaintiff's claim as to microphone model No. 2408 in entry 204802 having been abandoned is dismissed as well.

[3] As claimed the rates of duty would be 9, 8 or 6.5 percent ad valorem, depending on the dates of entry

provision for an article *as a part* does not prevail over a *specific provision* for such part. Thus, if the importations are microphones, they will be classified as such even though they are also parts of tape recorders.

I have not been persuaded by plaintiff that the presence of the on-off switch on these microphones makes them other than microphones since I view its presence as being, for the most part, auxiliary to the use of the microphones.

After the microphone is attached to the tape recorder, the switch must be in the "on" position in order for the tape recorder to work at all. The switch can then be used as a remote control to stop and start recording (assuming the main controls are already in the record mode) and to stop and start playback of recorded material (assuming the main controls are already in the playback mode).

In my opinion, the aforementioned capabilities of the switch are all derived from its fundamental role as an adjunct to the use of the microphone in recording, as a convenience in stopping and starting the recording process without resort to the main controls. In my view, the testimony will not support the proposition that the switch functions as a remote control device in a significant manner, separate and apart from its relation to the operation of the microphone. Consequently, the presence of the switch does not indicate the existence of either a genuine multifunctional article or an article which is more than a microphone.

In this respect, the switch under discussion is like the flashlight component which did not make the importation more than a screwdriver in *Astra Trading Corp.* v. *United States*, 56 Cust. Ct. 555, C.D. 2703 (1966), or the additional capability for coordination with X-ray apparatus and operation by automatic remote control which did not make the importation more than a syringe in *Schick X-Ray Co., Inc.* v. *United States*, 64 Cust. Ct. 430, C.D. 4013 (1970).

The switch, in its relation to the microphone, is not comparable to the gear assembly and motor combination which was held to be more than a motor in *United States* v. *The A. W. Fenton Co., Inc.*, 49 CCPA 45, C.A.D. 794 (1962). Nor can any support for plaintiff's position be derived from the case of *Edo Commercial Corp. et al.* v. *United States*, 65 Cust. Ct. 30, C.D. 4049 (1970). In *Edo* a claim that the importations were microphones could not be maintained in the face of evidence that the devices in question had *two coequal functions;* one, the conversion of sound to electrical energy associated with microphones and the other, the conversion of electrical energy to sound associated with loudspeakers. Nothing approaching that equality of function has been proven here.

For the reasons discussed above, these importations were properly classified as microphones rather than as parts of tape recorders.

Judgment will be entered accordingly.