(C.D. 4178)

KALIMAR, INC. *v.* UNITED STATES

---

United States Customs Court, First Decision

(Decided February 17, 1971)

*Glad & Tuttle* (*Robert Glenn White* of counsel) for the plaintiff.
*L. Patrick Gray, III*, Assistant Attorney General (*Robert Blanc*, trial attorney) for the defendant.

Before WATSON, MALETZ, and RE, Judges

MALETZ, Judge: This case involves the question as to the proper rate of duty on an item known as a Kali-Copier for the Polaroid Swinger Camera that was imported from Japan through the port of St. Louis, Missouri, in 1966. It was classified by the government under item 708.89 of the tariff schedules as other optical appliances and instruments and assessed duty of 45 percent. Plaintiff protests this assessment and claims that the import is properly classifiable under item 708.23 as other mounted lenses dutiable at only 25 percent.

The statutory provisions relevant to the present controversy are contained in subpart A, part 2, schedule 7 of the tariff schedules and read as follows:

Subpart A headnotes:

  *  *  *  *  *  *  *

  3. The provisions for mounted optical elements cover such elements when in a permanent frame or other mounting suitable for fitting to an apparatus or instrument and do not include mounted elements which are themselves separate instruments or apparatus such as spectacles, medical or dental mirrors, and hand magnifying glasses.

  Lenses, prisms, mirrors, and other optical elements, all of the foregoing whether mounted or not mounted:

  *  *  *  *  *  *  *

Mounted:
    Lenses:

| * | * | * | * | * | * | * |
|---|---|---|---|---|---|---|

708.23               Other _____      25% ad val.

| * | * | * | * | * | * | * |
|---|---|---|---|---|---|---|

Optical appliances and instruments not provided for elsewhere in part 2 of this schedule; * * *

| * | * | * | * | * | * | * |
|---|---|---|---|---|---|---|

708.89     Other appliances and instruments_____     45% ad val.

The article in issue is used with the Polaroid Swinger camera to make copies of photographs and other objects. It consists of a metal frame or stand and a close-up lens that is encased in a black circular casing. The base of the stand—which is called a print holder—is at a fixed focal distance of five inches from the close-up lens. Protruding from the base are two metal arms which support a rectangular metal platform that is parallel to and some 4½ inches above the base and in which is housed the close-up lens. The arms continue upward beyond the metal platform for another inch at a slight angle and are kinked at their ends to form clips to enable the Swinger camera to be inserted onto the stand. When the camera is so inserted, its lens fits over the close-up lens of the copier.

The need for a device such as the copier lies in the fact that the focal distance or range of the Swinger camera is from 3½ feet to infinity. Thus that camera cannot take a picture at a range of five inches except through use of a close-up lens such as the one contained in the copier. In other words, the copier changes the focal range of the Swinger camera so as to enable it to take a picture at a distance of five inches.

The copier does not fit any camera other than the Swinger and has no use by itself. To operate it, the camera is inserted into the metal platform; the picture desired to be copied is positioned into the base (i.e., the print holder); and the picture is then taken.[1]

In this setting, plaintiff argues that the close-up lens in the imported copier is mounted in a permanent frame and that the lens and its frame mounting have no independent use or existence apart from serving as a close-up lens for the Swinger camera. Thus, says plaintiff, the imported copier is but a mounted lens within the meaning of headnote 3 to subpart A which (as previously quoted) requires that "mounted optical elements" be "in a *permanent* frame or other mounting."

---

[1] Actually the object to be copied does not have to be inserted into the print holder so long as the object is positioned five inches from the close-up lens. Indeed, the close-up lens alone, if attached to the camera, would permit taking of close-up pictures provided that the camera were focused at a distance of five inches.

[Emphasis added.] Defendant, on the other hand, insists that the mounted lens portion of the copier consists only of the lens and its casing. Hence, it contends that the copier is more than a mounted lens and is itself an appliance or instrument. Thus, the issue is whether the imported copier is a mounted lens or more than a mounted lens for tariff purposes. For the reasons that follow, we conclude that the importation is more than a mounted lens and, therefore, affirm the government's classification.

In the first place, even a cursory inspection of the sample shows that the close-up lens and its casing can be easily removed from the metal frame—without in any way damaging the lens—simply by unscrewing a holding ring on the underside of the upper metal plate in a counter-clockwise direction.[2] Plaintiff argues, however, (in its reply brief) that it is "improper" for the court to consider the fact that the lens unscrews from the copying stand on the ground that unscrewing the sample's lens after trial is a "hearsay act" which is inadmissible and should be accorded no evidentiary value after the submission of the case by both parties. The argument is untenable. For it is established that when facts necessary to determine the classification of imported merchandise are ascertainable from an inspection by the court of the samples introduced into evidence, such facts may be accorded full evidentiary value. See e.g., *Krusi* v. *United States*, 1 Ct. Cust. Appls. 168, 169, T.D. 31213 (1911). Indeed, citation is unnecessary for the basic principle in customs law that a sample is a potent witness. It is true that at the trial of the case, plaintiff's witness testified that the lens portion of the frame can be removed from the metal frame but "[y]ou have to break it, probably, to do it." However, inspection of the sample in evidence negatives *in toto* the witness' testimony on this aspect. In this respect, we have a situation similar to that in *Gamble & Vargish & Co.* v. *United States*, 64 Cust. Ct. 568, 573, C.D. 4037 (1970), where the court's scraping of the surface of an imported money clip-folding knife-nail file combination revealed the presence of copper and brass-colored metals—which the court held was enough to negative entirely a witness' testimony that the articles were wholly of steel.

Headnote 3 to subpart A (as we have indicated before) requires that "mounted optical elements" be "in a *permanent* frame or other mounting." [Emphasis added.] Since the close-up lens of the copier is readily removable from the metal frame, the copier is clearly more than a "mounted" lens within the meaning of the tariff schedules. See e.g., *United States* v. *The A. W. Fenton Co., Inc.*, 49 CCPA 45, C.A.D. 794 (1962).

---

[2] It bears mention in this connection that plaintiff's witness testified that similar metal frames are imported without lenses, and that when so imported, the lens is inserted in the frame "by snapping it in * * * similar to the way that lens [in the imported copier] goes in."

Additionally, it is to be noted that the meaning of the term "mounted lens" is defined thusly in *Webster's New World Dictionary of the American Language*, College Edition (1962) :

> lens * * * 1. a piece of glass, or other transparent substance, with two curved surfaces, or one plane and one curved, regularly bringing together or spreading rays of light passing through it : a lens or combination of lenses is used in optical instruments to form an image : * * *.
>
> mounted * * * 4. fixed on or in the proper backing, support, setting, etc. * * *
>
> mount * * * 6. to place, fix, or fasten on or in the proper support, backing, etc. for the required purpose; specifically, a) to fix (a jewel) in a setting. b) to fix (a specimen) on (a slide) for microscopic study. c) to arrange (a skeleton, dead animal, etc.) for exhibition. * * *

It is clear from these definitions that the importation is more than a transparent substance used to form an image fixed in a proper backing, support or setting. As the record shows, the imported copier is an appliance or instrument which incorporates a lens at a fixed distance of five inches from an object to be copied and onto which snaps a Polaroid Swinger camera to accomplish the copying. In other words, the importation has two functions : Its metal framework serves as a copying stand into which the camera is inserted; its close-up lens allows a picture to be taken at a distance of five inches. Thus, the copier is more than a mounted lens; it is a mounted lens with the added feature of a copying stand. See e.g., *Gallagher & Ascher Company* v. *United States*, 63 Cust. Ct. 223, C.D. 3899 (1969).

The protest is overruled. Judgment will be entered accordingly.