(C.D. 4656)

LIBRASCOPE DIV. OF SINGER-
GENERAL PRECISION, INC. *v.* UNITED STATES

Court No. 72–2–00423

(Decided June 15, 1976)

*Glad, Tuttle & White* (*Robert Glenn White* of counsel) for the plaintiff.

*Rex E. Lee,* Assistant Attorney General (*John N. Politis* trial attorney), for the defendant.

RICHARDSON, Judge: The merchandise in this action, described on the invoice as "Navigation system type 193 No. 10", was exported

from France in March, 1969, and classified upon reliquidation at the port of Los Angeles-Long Beach, Calif. under TSUS item 708.89, as modified by T.D. 68-9 as other optical appliances and instruments at the duty rate of 36 *per centum ad valorem*. It is claimed by plaintiff that the merchandise should be classified under TSUS item 694.60, as modified by T.D. 66-9, T.D. 67-267, and T.D. 68-9 as other parts of aircraft at the duty rate of 7 *per centum ad valorem*, or alternatively, under TSUS item 710.46, as modified by T.D. 68-9 as other navigational instruments and parts thereof at the duty rate of 8 *per centum ad valorem*, or alternatively, under TSUS item 710.08, as modified by T.D. 68-9 as other optical navigational instruments at the duty rate of 22 *per centum ad valorem*.

In the pleadings it is admitted that the merchandise in issue is designed and dedicated for use in aircraft and is exclusively used in aircraft, and further, that the merchandise contains partially reflective glass on which flight information data such as the speed, the attitude, the compass heading, the rate of climb, the rate of descent, and the altitude of the aircraft, is displayed. It is also conceded in the pleadings that the merchandise in issue is not one of the articles or apparatus described in headnote 1 to Part 2C of TSUS Schedule 7 which reads in part:

This subpart does not cover—

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(v) electrical measuring, checking, analyzing or automatically controlling instruments and apparatus (see subpart D of this part);

The record shows that the imported merchandise, manufactured in France, consists of three units, namely, a collimating head, an adaption or electronics box, and two control boxes. When these units are installed in an airplane and coupled to the plane's sensor circuitry they function, when operated through the control boxes, in a manner which results in a display of various flight parameters upon a reflective glass positioned in the pilot's line of sight.

The electronics box receives electric impulses (sensory data) from the plane's sensors and relays them in an appropriate, useful manner to the collimating head. Motors in the collimating head operate in response to these electric impulses. The motors drive servos which move and position reticles or thin metal tapes which have images on them. An optical quartz prism in the head receives these images onto its several planes and combines them into a single image. The combined image is then put before collimating lenses which focus images at infinity onto a combining glass in front of the pilot. In this fashion the pilot is enabled to read the flight parameters while at the same

time maintaining visual contact ahead and outside of the plane. The use of the system eliminates the necessity of the pilot having to shift his eyes and constantly refocus them between instrument panel and vistas outside of the plane. Hence, the name "head-up display" is frequently used to describe the system represented by the imported merchandise.

Richard Potter, a senior staff engineer in plaintiff's employ for 20 years and in charge of systems design in 1969, testified that he reviewed all of the work done by plaintiff's engineers on the L–193 head-up display or HUD system, that the L–193 HUD gives the airplane pilot the information necessary to control, fly, and navigate his aircraft, and that it functions independently of the craft's instrument panel or head-down system (which is also coupled to the aircraft's sensor circuitry). The witness also testified that an L–193 HUD unit was bonded to the Federal Aviation Administration for a period of 3 years in connection with a certification program for HUD's, which was to have been undertaken by that agency. However, funding ran out before the program was ever commenced, according to Mr. Potter.

Alvin S. White, an aerospace consultant and airplane pilot who, in 1969 was employed by Trans World Airlines in flight operations, research and development, testified that he evaluated and tested the L–193 HUD in Europe for TWA, and that the system provides all the flight information necessary to fly a plane from takeoff to landing. He stated that his test flight in France lasted 5 hours, of which he flew about 2 hours. Altogether, he has used HUD's in navigating an airplane for about 20 hours of flight time. The witness was of the opinion that an airplane can be navigated by the L–193 HUD, and that all the information necessary to land at airports, such as Los Angeles, where the landing procedure begins 50 miles or more out of the airport, is supplied by the system.

Louis M. Seeburger, manager of the display systems laboratory at Hughes Aircraft Company with 30 years' experience as an electrical engineer, testified that he acquired familiarity with the L–193 HUD primarily from a brochure published by plaintiff similar to exhibit 4. The witness was of the opinion that the optical features of the L–193 HUD were the primary feature of the instrument, that it does aid human vision but only for the information that is being presented by it, and that the primary purpose of the display is to navigate the aircraft.

James C. McCawley, a customs import specialist and a professional airplane pilot for 20 years with extensive training in all types of navigation, radio navigation, pilotage, dead reckoning and celestial navigation, testified that he has used navigational head-up displays,

although not the L–193, and that a HUD is useful in all phases of flight from takeoff to landing. The witness also testified that celestial navigation is with reference to the stars, the planets, and the sun, and that he has worked with optical navigational instruments, which he considers to be instruments used to make star shots in celestial navigation. He stated that such instrument gives you information needed to figure out the location of the aircraft.

Plaintiff contends that the L–193 HUD is not an optical appliance because it is not a separate, independently functioning instrument. Plaintiff argues (brief, p. 16):

> . . . The projecting data images are not created by the prism or collimating head, but rather by the servo-mechanisms and the thin metal film or reticles. The prisms and collimating head only change the direction and mix the images they receive, and project them on the passive reflecting glass. Such functions are on the facts herein "subsidiary" to the purpose of the imported article and to the information system of which it is a component. . . .

Defendant contends that the L–193 is an optical instrument as that term is defined in headnote 3 of Part 2 of TSUS Schedule 7. Defendant argues (brief, p. 12):

> . . . We concede that some of the flight parameters which are displayed are scales which the pilot reads. There are other parameters, however, which are not in scale form such as the aircraft marker, the artificial horizon, the glide path, the localizer, and others . . . . Even if all the parameters were in scale form, the HUD would still come outside of the exclusion of Headnote 3 of Part 2, because the reading of the scales is not a subsidiary purpose of the HUD, but rather its primary purpose. . . .

Headnote 3 of Part 2 of TSUS Schedule 7 reads:

> The term "optical instruments", as used in this part, embraces only instruments which incorporate one or more optical elements, but does not include any instrument in which the incorporated optical element or elements are solely for viewing a scale or for some other subsidiary purpose.

Plaintiff also contends that the L–193 is part of a navigational instrument, optical or nonoptical. Plaintiff argues (brief, p. 19):

> The article in issue is manifestly employed in navigating an airplane, and when so installed and used in an airplane it is an essential component of the airplane's navigational instruments, and properly classifiable as a part thereof.

Defendant contends that the L–193 is not a nonoptical navigational instrument because it does not have sensors and an independent means of determining the position of an aircraft. Defendant also argues that the L–193 is not an optical navigational instrument because it does not measure angles, positions and other parameters, and that there is

no evidence that it is a *part* of a navigational instrument, optical or nonoptical.

Plaintiff further contends that the L-193 is part of an aircraft in that it is designed and dedicated to use in aircraft and is an essential component in navigating an aircraft. Defendant contends that the L-193 is not classifiable as part of an aircraft because there is a specific provision for such part, namely the provision for optical instruments.

On this record the court is of the opinion that the L-193 HUD is a nonoptical navigational instrument entitled to classification under TSUS item 710.46 as claimed, and so holds. There is no question in the court's mind but that the L-193 has been established by the uncontradicted testimony of an engineer who studied its design and construction and of an airplane pilot who employed it in flight to have the capability of directing the flight of an airplane from the point of takeoff to the point of landing and along a predetermined course of flight by means of devices guiding the craft to radio fixes or radio navigational devices. Such evidence conforms to the common definitions of "navigation" as laid down by the lexicons.

Further, the L-193 is, in the court's view, a complete instrument rather than a partial one even though it lacks sensors. From the evidence adduced it does not appear that sensors ever comprise a part of a navigational instrument *per se* utilized in an airplane, whether it be a head-up or a head-down instrument. The sensors and their circuitry constitute an integral part of the airplane to which any head-up or head-down navigational instrument is coupled. And the sensors, through their circuitry, merely furnish the "input" to the navigational instrument to enable it to perform its work. Consequently, to regard the L-193 HUD as being only a partial instrument because it lacks sensors would be like saying that a computer is not a complete instrument merely because it lacks program material or input. That such a conclusion is unwarranted in relation to the L-193 is further indicated by the fact that the customs authorities who examined the L-193 upon its importation treated it as a complete instrument when they classified it as an "optical instrument" under item 708.89—an item which contains no provision for parts of an instrument.

The L-193 HUD is not, in the court's opinion, an optical instrument as that term is used in Part 2 of TSUS Schedule 7, and, therefore, should not have been classified under item 708.89. The optical elements incorporated in the collimating head and in the reflecting glass perform *subsidiary* functions. They merely relay information which the system collects to the pilot by enabling the pilot to read the various scales. However, the primary work performed by the system, namely, collecting or receiving data from the sensors and its transmittal to the electronics box, and the conversion of electrical signals into mechanical

signals and images, are nonoptical functions which antedate the interplay of the optical functions.

Neither is the L-193 an optical navigational instrument in the court's view. Item 710.08 was derived from paragraphs 228(b) and 360 of the 1930 Tariff Act. *Tariff Classification Study*, Schedule 7, page 105. Insofar as optical navigational instruments are concerned (as reflected in the superior and inferior headings preceding item 710.08) the only instruments of this kind contained in the predecessor paragraph 228(b) were those used in celestial navigation, namely, azimuth mirrors, sextants, and octants—instruments utilized by a navigator to ascertain the accuracy of a compass heading or the position of a ship or aircraft in relation to celestial bodies. See and compare, *United States* v. *Bliss & Co.*, 6 Ct. Cust. Appls. 433, T.D. 35980 (1915). The information obtained by the navigator from the use of these instruments is, of course, generated by optical means. Inasmuch as the L-193 is not an instrument in this category, it does not appear to be within the ambit of item 710.08.

In view of pleading admissions to the effect that the L-193 is. designed and dedicated to use in aircraft and is exclusively used in aircraft, there is no doubt that the L-193 qualifies for classification as part of an aircraft. But inasmuch as there is, in the court's opinion, a specific provision for this part, namely, the provision for navigational instruments in item 710.46, classification of this aircraft part as a navigational instrument preempts other provisions placed in contention. See Rule 10(ij), *TSUS General Interpretative Rules*.

The foregoing disposes of the issues raised in the case. For the reasons stated the claim of the plaintiff for classification of the subject merchandise under item 710.46 as a navigational instrument is. sustained. Judgment will be entered accordingly.