**RANK PRECISION INDUSTRIES, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**C.D. 4866; Court No. 76–12–02771.**

United States Customs Court.

July 28, 1980.

Siegel, Mandell & Davidson, New York City (Herbert T. Posner, East Windsor, N. J., of counsel), for plaintiff.

Alice Daniel, Asst. Atty. Gen., Washington, D. C., Joseph I. Liebman, Atty. in Charge, Field Office for Customs Litigation, and Sidney N. Weiss, Trial Atty., New York City, for defendant.

NEWMAN, Judge:

This action presents for determination the proper classification, and hence the proper rate of duty, for a "Varotal 30 lens package" imported by plaintiff from England and entered at the port of Chicago, Illinois on June 25, 1974. In liquidating the entry, Customs classified the imported article as a mounted lens (other than projection) under item 708.23 of the Tariff Schedules of the United States (TSUS), as

modified by T.D. 68–9, and assessed duty at the rate of 12.5 per centum ad valorem. As an alternative classification, the Government claims that the merchandise is encompassed by the provision in item 708.89, TSUS, as modified, for "Other [optical] appliances and instruments", for which the rate of duty is 22.5 per centum ad valorem. Plaintiff claims that the merchandise is properly dutiable at the rate of 6 per centum ad valorem under the provision in item 685.10, TSUS, as modified, for parts of television cameras.

I find that the merchandise is classifiable under item 708.89, TSUS, as alternatively claimed by the Government. Accordingly, this action is dismissed without affirming the classification of the district director under item 708.23, TSUS.

## STATUTES INVOLVED

19 U.S.C. § 1202, Tariff Schedules of the United States:

Schedule 7, Part 2, Subpart A:

Classified:

> Lenses, prisms, mirrors, and other optical elements, all of the foregoing whether mounted or not mounted:

\* \* \* \* \* \* \*

> Mounted:
> Lenses:

\* \* \* \* \* \* \*

708.23    Other .............. 12.5% ad val.

Defendant's Alternative Claim:

> Optical appliances and instruments not provided for elsewhere in part 2 of this schedule; frames and mountings for such articles, and parts of such frames and mountings:

\* \* \* \* \* \* \*

708.89    Other appliances and instruments ................ 22.5% ad val.

Schedule 6, Part 5:

Plaintiff's Claim:

> Radiotelegraphic and radiotelephonic transmission and reception apparatus; radiobroadcasting and television transmission and reception apparatus, and television cameras; record players, phonographs, tape recorders, dictation recording and transcribing machines, record changers, and tone arms; all of the foregoing, and any combination thereof, whether or not incorporating clocks or other timing apparatus, and parts thereof:

685.10    Television cameras, and parts thereof ................. 6% ad val.

## THE FACTS [1]

The "Varotal 30" is a television camera lens system comprised of a number of optical, electrical, and mechanical components.[2] The primary function of this optical–electro–mechanical system is to transmit light and a focused image to the broadcast equipment, where it is converted into electrical signals.

The optical unit of the Varotal 30 contains the glasses of the lens and includes four main subassemblies: the focus unit, the zoom unit, the iris unit, and the rear unit. To the body of the optical unit are fitted three drive units for controlling the focus, the zoom, and the iris mechanism (aperture) of the lens. The iris unit consists of a system of blades that regulate the amount of light transmitted through the lens to the pickup tubes located within the television camera body, and is operated by means of an iris servo drive module. The zoom feature of the lens is accomplished by changing the positioning of the optical elements so as to vary the effective magnification of the lens.

1. The record consists of the testimony of five witnesses called on behalf of plaintiff and one witness called by defendant. Plaintiff's witnesses were: Brendan M. Murphy, Treasurer of plaintiff Rank Precision Industries, Inc.; Kish B. Sadhvani, plaintiff's Product Manager; Raymond J. Smith, employed by RCA Corporation as Engineering Manager for Camera Equipment; David Frederick Shade, Chief Accountant for Rank Taylor Hobson, Leichester, England; and Walter David, Jr., Operations Manager for Optical Imports, Incorporated. Defendant called as its witness Dr. Leonard Bergstein, Professor of Electro–Optical Sciences at Polytechnic Institute of New York. Both parties submitted various exhibits. The official papers were received without marking.

2. The importation, when assembled in operating condition, consists of the following component parts: power supply module, iris servo drive module, focus servo module drive, zoom servo module drive, systems board, dual demand shot box, adjustable pan bar "S" type, "Tally" lights, focus demand control, range extender remote control, electrical connecting cables, in addition to basic 10:1 zoom lens unit.

A motor drive allows zoom by electro–mechanical movement of the optical elements within the system. An adjustable pan bar "S" type provides a "zoom rate" method of servo zoom control. The dual demand shot box is a programming component which provides a method of preset servo control of both focus and zoom functions. The Varotal 30 also includes a number of circuits, amplifiers, switches and other electrical components that are necessary to power and control the operation of the lens. In addition to the electrical components, the Varotal 30 includes various mechanical components that are required for the control and power of the lens and to interface the system with the television camera.[3] Finally, the imported merchandise contains two "Tally" lights that are the means by which the performers are made aware of the camera "on the air".

## OPINION

### I

■ Initially, we consider plaintiff's claim that classification of the subject merchandise by the district director under item 708.23, TSUS, represents a change, without notice, of a prior uniform and established practice (viz., during the years 1970–72) of classifying the merchandise as parts of television cameras under item 685.10, TSUS, in violation of section 315(d) of the Tariff Act of 1930, as amended (19 U.S.C. § 1315(d)). That provision reads:

No administrative ruling resulting in the imposition of a higher rate of duty or charge than the Secretary of the Treasury shall find to have been applicable to imported merchandise under an established and uniform practice shall be effective with respect to articles entered for consumption or withdrawn from warehouse for consumption prior to the expiration of thirty days after the date of publication in the weekly Treasury Decisions of notice of such ruling * * *.

At the outset, it must be determined "whether the Secretary of the Treasury (or his delegate) has made a 'finding' of 'an established and uniform practice' pursuant to section 315(d)". *Ditbro Pearl Co. v. United States*, 62 CCPA 95, 96, C.A.D. 1152, 515 F.2d 1157, 1158 (1975); *Asiatic Petroleum Corp. v. United States*, 59 CCPA 20, 22, C.A.D. 1029, 449 F.2d 1309 (1971). In order to establish the requisite "finding" under the statute, plaintiff introduced in evidence a letter by Customs dated August 31, 1976 (exhibit 3) concerning the tariff classification of "motorized television lenses for industrial television cameras produced in West Germany".[4] This letter, somewhat equivocally, states: "[I]t appears that a uniform and established practice exists of classifying the merchandise in question under the provision for parts of television cameras, in item 685.10, TSUS". Plaintiff contends that it "was entitled to rely upon the 'finding' made by the Customs Service" (brief, 24).

Significantly, the official papers show that the entry in this case was made on June 25, 1974, and liquidated on July 19, 1974–*more than two years prior to the "finding" of an established and uniform practice*, as set forth in exhibit 3. Consequently, it is obvious that at the time of importation in 1974 plaintiff could not have relied upon the section 315(d) "finding" made by Customs in 1976. Indeed, the statute is clear that the notice requirement for a change of practice is intended for the benefit of importers whose entries are made *after* a "finding" of an established and uniform practice. *Asiatic Petroleum Corp., supra.*

In order to "substantiate" the August 31, 1976 "finding", plaintiff presented the testimony of its witness Murphy concerning the

---

3. The subject merchandise is connected directly to the front of the television camera.

4. The "motorized television lenses" are described in the letter as follows: "These are motorized * * * television lenses for use on closed circuit vidicon television cameras. The television lenses are controlled by three motors, and power is transmitted to the lens elements and the iris by a system of cables which are attached to the television camera and the television lens".

liquidations in 190 entries by plaintiff of Varotal systems and other merchandise[5] at the ports of New York, Chicago and Los Angeles during the period of 1970–72.[6] It appears that of these 190 entries, 182 were liquidated as television camera parts, and 8 were liquidated as mounted lenses (R. 32).[7] Thus, rather than proving the existence of an established and uniform practice during 1970–72, Murphy's testimony demonstrates that there was some ambivalence on the part of Customs respecting the appropriate classification for the merchandise. Moreover, in a letter written on February 15, 1973, by Customs to plaintiff (exhibit A), plaintiff was notified that zoom lenses and rear units for television cameras were not classifiable as parts of television cameras in view of the specific provision in item 708.23, TSUS, for mounted lenses, citing General Interpretative Rule 10(ij).

In sum, since as of the liquidation date (July 19, 1974) there was no "finding" under section 315(d) relating to the subject merchandise, nor was there in fact an established and uniform practice during the years 1970–72 of classifying the merchandise as parts of television cameras under item 685.10, TSUS, I find that plaintiff's claim under section 315(d) is without merit.

## II

We now turn to the merits of whether the Varotal 30 system was properly classified by Customs as a mounted lens under item 708.23, TSUS. Plaintiff maintains, and I agree, that the merchandise is more than a mounted lens within the common meaning of that term.[8]

As recently observed by Chief Judge Markey of our Appellate Court in *United States v. Texas Instruments*, 67 CCPA ——, C.A.D. 1244, 620 F.2d 269 (1980):

"Only the most general of rules can be ascertained from the previous decisions dealing with the 'more than' doctrine, and it appears that each case must in the first analysis be determined on its own facts." *E. Green & Son (New York), Inc. v. United States*, 59 CCPA 31, 34, C.A.D. 1032, 450 F.2d 1396, 1398 (1971) * * *.

And in *Green, supra*, the Appellate Court also stated (59 CCPA at 34, 450 F.2d at 271):

* * * In order to determine if an article is more than that provided for in a particular tariff provision, it is necessary to ascertain the common meaning of the tariff provision and compare it with the merchandise in issue. It is well established that in determining the common meaning of a term or word used in a tariff provision, court decisions, dictionary definitions, and other lexicographical authorities may be considered.

See also *Ozen Sound Devices v. United States*, 67 CCPA ——, C.A.D. 1246, 620 F.2d 880 (1980); *The Englishtown Corporation v. United States*, 64 CCPA 84, 87, C.A.D. 1187, 553 F.2d 1258 (1977).

■ In support of its contention that the Varotal 30 is more than a "mounted lens" within the common meaning of that term, plaintiff cites *Kalimar, Inc. v. United States*, 66 Cust.Ct. 112, C.D. 4178 (1971). There, a Kali–Copier for the Polaroid Swinger camera used to make copies of photographs and other objects was assessed with duty as "Other [optical] appliances and

---

5. The 190 entries included Varotal systems and parts thereof, closed circuit television systems, cables and other parts of television cameras.

6. The letter of August 31, 1976 (exhibit 3) does not show that a uniform and established practice of classifying the merchandise under item 685.10 existed in the 1970–72 period, which is the period of time relied upon by plaintiff.

7. Plaintiff's witness David also testified that television lens systems manufactured by Aegeneiux and imported by Optical Imports, Incorporated from 1969 to 1973 were classified and liquidated by Customs as parts of television cameras under item 685.10, TSUS.

8. Defendant does not claim that the provision in item 708.23, TSUS, for mounted lenses should be construed in accordance with any special commercial meaning or designation that differs from the common meaning. For an in depth discussion of "commercial designation" see *S. G. B. Steel Scaffolding & Shoring Co., Inc. v. United States*, 82 Cust.Ct. 197, C.D. 4802 (1979).

instruments" under item 708.89, TSUS, and was claimed by the importer to be properly dutiable as "Other" mounted lenses under item 708.23, TSUS. The copier consisted of a metal frame or stand and a close–up lens in a black circular casing. The Government argued that the mounted lens portion of the copier *consisted only of the lens and its casing*, and therefore the copier was more than a mounted lens. Hence, the issue was whether the imported copier was a mounted lens or "more than" a mounted lens for tariff purposes. Judge Maletz, writing for the First Division, held that the copier was "more than" a mounted lens, viz.: it was a mounted lens with the added feature of a copying stand. In reaching its determination in *Kalimar*, the court cited and adopted the following definitions contained in *Webster's New World Dictionary of the American Language*, College Edition (1962) (66 Cust.Ct. at 116):

> lens * * * 1. a piece of glass, or other transparent substance, with two curved surfaces, or one plane and one curved, regularly bringing together or spreading rays of light passing through it: a lens or combination of lenses is used in optical instruments to form an image: * * *.
>
> mounted * * * 4. fixed on or in the proper backing, support, setting, etc. * * *
>
> mount * * * 6. to place, fix, or fasten on or in the proper support, backing, etc. for the required purpose; specifically, a) to fix (a jewel) in a setting. b) to fix (a specimen) on (a slide) for microscopic study. c) to arrange (a skeleton, dead animal, etc.) for exhibition. * * *

Applying the foregoing definitions, the *Kalimar* court determined that the mounted lens provision in item 708.23, TSUS, was not applicable to the copier since "the importation is more than a transparent substance used to form an image fixed in a proper backing, support or setting" (*id.* at 116).

Similarly here, it is patently clear that while the Varotal 30 includes a "transparent substance used to form an image fixed in a proper backing, support or setting", the merchandise also includes many significant electrical and mechanical components that are not embraced by the common meaning of the term mounted lens as determined in *Kalimar*. Accordingly, I agree with plaintiff's contention that the Varotal 30 is "more than" a mounted lens within the purview of item 708.23, TSUS; and therefore the district director's classification under that TSUS item was erroneous.

### III

Since the Varotal 30 is "more than" a mounted lens, as classified by Customs, we reach defendant's alternative claim that the merchandise is classifiable under item 708.-89, TSUS, as "Other [optical] appliances and instruments". In determining whether the imported merchandise is classifiable as an "optical instrument" under the TSUS, the statutory definition of the term in headnote 3, part 2, schedule 7 is controlling. *United States v. Ataka America, Inc.*, 64 CCPA 60, 65, n. 4, C.A.D. 1184, 550 F.2d 33, 36 (1977). Headnote 3 reads:

> 3. The term *"optical instruments"*, as used in this part, embraces only instruments which incorporate one or more optical elements, but does not include any instrument in which the incorporated optical element or elements are solely *for* viewing a scale or for some other subsidiary purpose.

■ Under the foregoing definition the issue is not whether the optical element is "subsidiary" or "dominant", but rather "the statutory distinction is between 'subsidiary' and *not* 'subsidiary'." (Emphasis added.) *Ataka*, 64 CCPA at 66, 550 F.2d at 36, n. 5. It should be stressed that plaintiff does not contend in its brief that the optical elements of the Varotal 30 are "subsidiary" to the use of the merchandise as a lens system for a television camera, and obviously they are *not* "subsidiary".[9]

---

**9.** The optical components of the Varotal 30 are prominently depicted in schematic form in the manufacturer's promotional brochure (defendant's exhibit B).

**1354**

In *Norman G. Jensen, Inc. v. United States,* 77 Cust.Ct. 9, 13, C.D. 4668 (1976), Judge Maletz observed with reference to headnote 3:

> As stated previously, the imported sights were classified under item 708.89 as other optical appliances and instruments. Also, as stated previously, headnote 3 of part 2, schedule 7 of the tariff schedules defines "optical instruments" as "instruments which incorporate one or more optical elements, but does not include any instrument in which the incorporated optical element or elements are solely for viewing a scale or for some subsidiary purpose." *Viewed against this statutory definition, it must be concluded that if an imported article consists of one or more optical elements the purpose of which is not subsidiary with regard to the operation of that article, then it is properly classifiable as an "optical instrument" under the tariff schedules.* See *Amaco, Inc. v. United States,* 74 Cust.Ct. 172, 179, C.D. 4602 (1975). See also *Librascope Div. of Singer–General Precision, Inc. v. United States,* 76 Cust.Ct. 197, C.D. 4656 (1976). [Emphasis added.]

Since the Varotal 30 incorporates one or more optical elements which are *not subsidiary* with regard to the operation of that article, it is properly classifiable as an "optical instrument" under item 708.89, TSUS.

Plaintiff argues that since the Varotal 30 is an "appliance" and not an "instrument", the definition in headnote 3 of "optical *instruments* " (emphasis added) is inapplicable in this case, "which relieves plaintiff of the burden of establishing that the optical portion of the system is used for a subsidiary purpose" (reply brief, 11). This argument is specious. *Webster's New International Dictionary* (2d ed. 1950), p. 1288, cited by plaintiff, broadly defines the term "instrument", as follows: "That by means of which any work is performed or result is effected; a medium; means". Plainly, then, the Varotal 30 is an "instrument" within the purview of headnote 3.

I am also unable to agree with plaintiff's contention that the merchandise is "more than" an optical appliance or instrument "as it contains a majority of components that are unrelated to the optical element of this system" (reply brief, 11). · The Varotal 30, referred to by plaintiff's witness Murphy as an "optical system" (R. 29) and as an "optical package" (R. 42), is essentially a television camera lens with a sophisticated system of electronic and mechanical controls for the iris (aperture), zoom and focus, which are all optical features of the merchandise. Inasmuch as the record shows that the major electro–mechanical components of the merchandise are directly related to the optical function of the lens system, the electro–mechanical features of the Varotal 30 do not exclude the merchandise from the definition of "optical instruments" in headnote 3. *Cf. Corning Glass Works v. United States,* 82 Cust.Ct. 249, C.D. 4807 (1979) (machine for optical inspection of ampuls with non–optical apparatus to mechanize and pace the inspection process).

In support of its "more than" argument, plaintiff strongly emphasizes the "Tally" light feature of the merchandise. As indicated above, these lights signal to the performers which camera is "on the air" at the particular time. The testimony of record shows that this feature is essential in television broadcasting. Nevertheless, a careful examination of the manufacturer's promotional brochures (defendant's exhibits B and C) fails to disclose any mention of the "Tally" light feature. The silence of the promotional brochures respecting the "Tally" lights is eloquent testimony as to their ancillary and subordinate status relative to the optical components of the merchandise, which are prominently depicted and described in the brochures.

The short of the matter is that, although the merchandise is "more than" a "mounted lens" within the common meaning of that term, the lens system herein meets the *broader* definition of "optical instruments" in headnote 3, and thus, falls within the purview of item 708.89, TSUS, as alternatively claimed by defendant. Since the subject merchandise is specifically pro-

vided for as an optical appliance or instrument under item 708.89, TSUS, classification as a part of a television camera under item 685.10, TSUS, is precluded by General Interpretative Rule 10(ij).[10] *Cf. Jensen, supra*, 77 Cust.Ct. at 21. Inasmuch as no reliquidation may be had in this case at the higher rate of duty applicable to "Other [optical] appliances and instruments" under item 708.89, TSUS, the action is dismissed without affirming the classification by the district director. See *Sumitomo Shoji New York, Inc. v. United States*, 64 Cust.Ct. 299, 304, C.D. 3994 (1970).

Judgment will be entered accordingly.

10. Rule 10(ij) provides that "a provision for 'parts' of an article covers a product solely or chiefly used as a part of such article, but *does not prevail over a specific provision for such part*". (Emphasis added.)